**BURNET, Com'r of Internal Revenue, v. IMPERIAL ELEVATOR CO.**

No. 9638.

Circuit Court of Appeals, Eighth Circuit.

July 20, 1933.

644

WOODROUGH, Circuit Judge, dissenting.

---

Norman D. Keller, Sp. Asst. to Atty. Gen. (Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and J. M. Leinenkugel, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for petitioner.

E. F. Hoeschen, of St. Paul, Minn. (C. C. Goodson, of St. Paul, Minn., on the brief), for respondent.

Before STONE and WOODROUGH, Circuit Judges, and MUNGER, District Judge.

### STONE, Circuit Judge.

The P. L. Howe Lumber Mills was a Montana corporation engaged in the manufacture of lumber. Between 1906 and 1919, respondent acquired about 96 per cent. of the outstanding capital stock of the mills company at a cost of $264,900. For many years prior to 1923, respondent had operated the mills company as a branch of its business. Becoming financially embarrassed, the mills company, on May 1, 1922, entered into an agreement to protect its creditors, which provided for the liquidation of that corporation. This agreement provided for the institution of a trustee to hold, as such, the capital stock owned by respondent for the purpose of giving the creditors' committee complete control, with power to make such disposition of the assets of the mills company in the liquidation as might be thought advisable by the committee. Under the agreement, the committee also had power to authorize the mills company to borrow funds for the purposes of its business. The liquidation was finally completed on December 1, 1922, by the sale of all of the assets of the mills company for an amount very much less than necessary to satisfy the outstanding indebtedness.

Respondent and the mills company made consolidated income tax returns, by fiscal years, for the taxable periods from January 1, 1918 to June 30, 1923, inclusive. In the last above taxable year the respondent charged off, as a loss, the amount of $264,900, which represented the cost to it of the above stock in the mills company. After the fiscal taxable year 1923, the respondent has made separate returns.

The present controversy is whether this loss can be carried forward as a deduction for the taxable year 1925. Two matters are in issue. The first is whether the loss to this taxpayer occurred in the fiscal year 1921 (on May 1, 1922, when the liquidation agreement was made), or in the taxable year 1922 (on December 1, 1922, when all of the assets of the mills company were sold and were insufficient to satisfy creditors). If the loss is to be regarded as sustained in the tax year 1921, the statute would not carry it beyond the year 1924. The second question is, if the loss is to be regarded as suffered in the tax year 1922, and, therefore, could be extended to the tax year 1925, whether this taxpayer is prevented from taking advantage of the deduction either because it is a different taxpayer from that represented by the consolidated returns or because to allow such deduction would be, in effect, an allowance of a double deduction for this loss. The board found all of these contentions against the commissioner, and the case is brought here on the findings of fact, the opinion, and the order of the Board of Tax Appeals.

I. As to the first point, we think the view of the board is correct. It is true that the situation revealed by the findings would lead one to believe that the condition of the mills company was hopeless upon May 1, 1922, when the liquidation agreement was made, and that there would not only be no realization of value left for the stock, but that there would be insufficient realization from the assets to satisfy creditors and, although this situation is expressly recognized in the agreement itself, where it is stated that because of losses incurred and depreciation suffered in value of assets "it has become manifest and is now conceded by all the parties hereto that the capital stock of the lumber company has no present or prospective value whatsoever except as a convenient means of holding its assets and liquidating its affairs," yet it is also true that no date is

fixed for liquidation, the company was to and did continue in operation thereafter and that there was power to borrow money for the purposes of its business. Thus, while there was the strongest probability at that time that the stock would prove entirely worthless, yet that fact was not finally determined until the disposition of all of the assets, upon December 1, 1922, at which time the proceeds were found insufficient to satisfy the debts.

II. If the loss occurred, as we think, on December 1, 1922, within the taxable year 1922, then the statute would carry forward the right of deduction into the year 1925, unless prevented for one of the two reasons stated above. The first of these reasons is based on the facts that up to the end of the fiscal year 1923, consolidated returns were filed, while for the year 1925, separate return was filed by the respondent. From this it is argued that since the carrying forward of deductions is purely a statutory matter which should be strictly construed, it should not be applied where there is a difference in the taxpayers and that such difference here appears because of the consolidated and separate returns for the above years. This seems without foundation. It is true that such deductions do depend purely upon the statutes and it may be that in cases of doubt the resolution thereof should be against the taxpayer but, even so, the loss claimed here was for capital stock owned, exclusively, by this taxpayer. It alone had made the investment in the stock and it alone suffered the loss when that stock became worthless.

The second reason is based on the claim that a deduction for this loss was taken in the consolidated return for the taxable year 1922, and that to permit it now to be applied to the year 1925 would result in a double deduction. This contention does not seem to be borne out by the facts. For the tax year 1923, there was a separate taxable income of this taxpayer amounting to $86,624.57. Also, during that year it received dividends in the amount of $11,560, and interest on United States obligations in the amount of $4.72. While it is not clearly stated in the findings, we think it is plainly inferable that the loss deduction taken in that year was $413,387.30, which was sustained entirely as an *operating* loss of the mills company from July 1, 1922, to December 1, 1922, when it was liquidated. Operating losses of the subsidiary are, obviously, different from losses on the stock held by the taxpayer and the board expressly finds that

no deduction was taken for the stock loss in that year. In the taxable year 1924, this taxpayer sustained an operating loss and, therefore, it was unnecessary for it to carry forward any part of the stock loss from the year 1922. For the tax year 1925, the taxpayer had a taxable income of $93,164.92 and it is to affect this income that the present deduction is sought. We think it is clear that the stock loss has never entered into any deduction prior to the present attempt. But if it had, it is quite obvious that it would have been applied only to the year 1923, during which there was a. taxable gain, and after deducting its taxable gain for that year, as well as the dividends and interest on United States obligations there would remain much more than the taxable income for the year 1925, and that balance the taxpayer would have a right to carry forward. In either view of the application of the deduction, we think the result would be the same.

We conclude that the Board of Tax Appeals was right and the petition for review should be dismissed.

WOODROUGH, Circuit Judge, dissents.