**KENNEDY v. UNITED STATES.**

Civ. No. 1255.

United States District Court
D. Rhode Island.

Dec. 31, 1952.

510

William M. Connell, Thomas F. Vance, Jr., Pawtucket, R. I. and Edward J. Feeley, Providence, R. I., for plaintiff.

George F. Troy and Edward M. McEntee, both of Providence, R. I., and A. Barr Comstock, of Washington, D. C., for defendant.

LEAHY, District Judge.

This is an action brought by Joseph A. Kennedy originally against Farrell D. Coyle, Collector of Internal Revenue. The Collector having deceased, the United States of America was substituted as party defendant by agreement of counsel. The action is for a refund of an individual deficiency income tax and interest assessed and paid for the year 1946 in the total amount of $1,006.49, with interest according to law.

The material facts, as stipulated by the parties and as testified to at the trial, are substantially as follows: In his 1946 income tax return the plaintiff taxpayer claimed a deduction of $3,750 as a loss sustained in that year by reason of theft. The deduction was disallowed by the defendant, and the resulting assessment, in the sum of $1,006.49, was paid by the plaintiff. He subsequently filed a claim for a refund of the tax. The claim was disallowed, and suit thereon was then commenced by the plaintiff in this Court.

The plaintiff testified that he had placed a sum of money in a metal container which he had hidden under the cement floor of the basement of his home. He testified further that in October of 1946, after being absent from the city for approximately a month, he went to the place of concealment and found that the container had been taken from its hiding place, broken open, and the money taken therefrom. The bands which had been wrapped around the bills by the bank were on the floor of the basement. The plaintiff immediately telephoned the local police, and notified them of his loss. The plaintiff testified that there was no insurance coverage for the loss, and that he has never recovered any of the money.

A police inspector testified that he and another inspector investigated, as a routine assignment in October of 1946, the theft of plaintiff's money; that they examined the premises and interviewed the plaintiff, his two sons, their wives, two meter readers, and other persons. He testified further that there was an active investigation for two weeks; that the metal container found on the premises apparently had been forced open; that there was a depression in the cellar near the water meter; and that the container could easily fit into this depression. There was no evidence that the house had been broken into.

In the course of his testimony the plaintiff explained the act of burying the money by stating that his occupation as a specialist in industry and as a salesman required his traveling as far north as Canada and as far west as Denver, and that his previous experience had made him fearful of being without money on hand to meet his travel requirements. He testified also that the actual presence of money in his home gave him a feeling of security.

He testified further that the money was accumulated by withdrawals from his checking account in the amounts of $900, $2500, $2000, and $1000. The money was kept in a crock and later transferred to a metal container. At the time of the transfer he withdrew a part of the money for other purposes, and counted the money then remaining in the metal container, which amounted to $3850. This action, however, is based on an alleged loss of $3750, that being the amount claimed as a deduction in the plaintiff's income tax return.

The plaintiff testified further that he made a diagram showing the location of the hidden money, put the diagram in a sealed envelope addressed to his sons, and placed the envelope in his safety deposit box, directing in a note that the money be divided between his sons if anything happened to him. It does not appear that anyone other than the plaintiff had access to this safety deposit box. The envelope was opened in the New Haven office of the Bureau of Internal Revenue and the diagram withdrawn therefrom. This diagram was introduced at the trial of this case as plaintiff's exhibit No. 1. The plain-

tiff testified that he kept books showing all his transactions; that Mr. Erickson, an Internal Revenue agent, examined his books; that he made up his tax return from these books; and that his books and his check stubs were in the Courtroom for examination.

The following additional facts were testified to by the plaintiff and other witnesses: One of the plaintiff's sons had made his home with him from 1944 to 1950, and had lived in the house during periods when the plaintiff had been absent, including the period during which the money was stolen. No one else lived in the house with the plaintiff. This son drank and gambled, and on occasion drank to excess. As a result of a previous accident to the son in which his hands had been injured, he did not work steadily but had various positions from time to time. The son did, however, have considerable means of his own. The plaintiff had frequently asked this son whether the latter had taken the money, and had been quite "harsh" with him. The plaintiff testified that the son felt insulted and had stated that he did not know how the money had disappeared. The plaintiff refused to give the son any money for some two years after the theft, and finally put him out of the house. Prior to the time that the money was stolen the son had often received money gifts from the plaintiff, who stated that he had never refused to give the son money when he had asked for it. Plaintiff testified that he was now financing a business venture partly for his son's benefit.

The question presented here is whether or not the plaintiff taxpayer sustained a loss, by theft of cash, in the amount of $3750, under such circumstances as would justify a deduction of said amount, under the provisions of Section 23(e) of the Internal Revenue Code, 26 U.S.C.A. § 23(e), in computing his income tax for the year 1946.

The applicable paragraphs of the Internal Revenue Code read in part as follows:

"§ 23. Deductions from gross income.

"In computing net income there shall be allowed as deductions: * * *

"(e) Losses by individuals. In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise— * * *

"(3) Of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, or from theft."

Treasury Regulation III, promulgated under the Internal Revenue Code, provides in part as follows:

"Sec. 29.23(e)–1. Losses By Individuals.—

"In general losses for which an amount may be deducted from gross income must be evidenced by closed and completed transactions, fixed by identifiable events, bona fide and actually sustained during the taxable period for which allowed. Substance and not mere form will govern in determining deductible losses. Full consideration must be given to any salvage value and to any insurance or other compensation received in determining the amount of losses actually sustained."

It is unquestioned here that the plaintiff, as a taxpayer in a refund suit, has the burden of proof. Niles Bement Pond Co. v. U. S., 1930, 281 U.S. 357, 50 S.Ct. 251, 74 L.Ed. 901. The Court is satisfied that the plaintiff testified honestly and truthfully as to the facts in this case. The defendant does not appear to seriously contend that the money was not stolen. The Court finds that the plaintiff has sustained the burden of proof with respect to the occurrence of the theft, and finds that a theft of plaintiff's money occurred in the amount and in the manner claimed by him.

The defendant contends that there is insufficient proof that the loss was "closed and completed", and "actually sustained" in the year 1946, and that therefore the loss is not deductible for that year by the plaintiff.

In its brief the defendant lays considerable stress on the fact that there was some suspicion on the part of the police and the plaintiff that the money was stolen by a member of the plaintiff's family or by one of the meter men. Defendant also stresses the fact that the plaintiff continued beyond the year 1946 his efforts to ascertain the identity of the thief and to recover the stolen money. Defendant notes further that the case is not considered closed by the police and that the plaintiff never requested the police to discontinue the investigation. The defendant then concludes that the plaintiff obviously did not consider at any time during the year 1946 that the incident was "closed and completed" or that the loss was "actually sustained" in that year.

As stated in Sec. 29.23(e)-1 of Treasury Regulation III, supra, "Substance and not mere form will govern in determining deductible losses." In view of this, it seems immaterial that subsequent to 1946 the plaintiff continued his efforts to solve the theft. Clearly plaintiff should not be deprived of his right to take a deduction merely because he has persisted in such efforts. Otherwise he might be precluded from ever claiming the deduction. The fact that the police do not consider the case closed simply means, as was testified to by the police inspector, that the case has not been solved. The fact that the plaintiff has never requested the police to discontinue the investigation has little significance.

Whether and when a deductible loss results from a theft is a question of fact, a practical one to be decided according to surrounding circumstances. See Boehm v. Commissioner, 1945, 326 U.S. 287, 66 S. Ct. 120, 90 L.Ed. 78; Boston Consol. Gas Co. v. Commissioner of Internal Rev., 1 Cir., 1942, 128 F.2d 473. Here the plaintiff's money was stolen in the year 1946. Plaintiff reported the theft to the police in October of that year. In cooperation with the plaintiff, the police carried on an active investigation of the theft for two weeks, and terminated their investigation in that year, but without identifying the thief or recovering the stolen money. After six years the identity of the thief is still unknown and no part of the money has been recovered. In view of these facts the Court believes that the plaintiff is justified in claiming that his loss was sustained in that year. Indeed the Court can find no reason for attributing the loss to any year other than 1946.

The defendant insists that the plaintiff cannot properly deduct the loss because he has not exhausted his legal remedies against those persons who were under suspicion. Such a requirement, however, places undue emphasis on form rather than substance. There is nothing in the record before the Court which would warrant the institution of either civil or criminal proceedings against any known person. Cf. Earle v. Commissioner of Internal Revenue, 2 Cir., 1934, 72 F.2d 366. The Court believes that the plaintiff did all that could reasonably have been required of him under the circumstances.

The situation is thus clearly distinguishable from that involved in Maxwell v. Commissioner, decided February 7, 1940 (1940 P-H B.T.A. Memorandum Decisions, par. 40,081), which has been cited by the defendant, since in that case the Tax Board found as a fact that a husband stole certain property from his wife. She was denied a loss deduction, because her conduct in not suing the husband constituted an abandonment. See also Earle v. Commissioner of Internal Revenue, supra.

The other cases cited by the defendant on this point likewise concern situations where there was a known responsible party. The failure of the taxpayer to prosecute in those cases was therefore held to be fatal to the allowance of a loss deduction.

The cases cited by the defendant relative to "salvage value" involve situations where there was some present opportunity for salvage. See Burnet v. Imperial Elevator Co., 8 Cir., 1933, 66 F.2d 643; Lambert v. Commissioner of Internal Revenue, 10 Cir., 1939, 108 F.2d 624. No such opportunity has been shown to exist here.

Upon consideration of all the evidence presented in this case, the Court finds that the $3750 deduction claimed by the

plaintiff represented a bona fide loss by theft sustained by him in the year 1946. The plaintiff is therefore entitled to a refund from the defendant of the tax and interest assessed and paid with respect to this amount.

Judgment may be entered for the plaintiff in the sum of $1006.49, with interest.