BELLA FEINSTEIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ABRAHAM FEINSTEIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 43721, 43722. Filed July 14, 1955.

*Arthur M. Schneck, Esq.,* for the petitioners.
*James E. Markham, Jr., Esq.,* for the respondent.

## OPINION.

TIETJENS, *Judge:* Petitioners' theory of their case may thus be summarized: They owned 1,000,000 French francs value of the bonds described in our Findings of Fact; these bonds became worthless as a war loss in 1941 upon the commencement of war between the United States and Rumania as provided in section 127 of the Internal Revenue Code of 1939; they "recovered" the bonds in 1945 in which year the fair market value of the bonds was at least $26,000; and, finally, the bonds became worthless in 1947, the year before us.

The "war loss" in 1941 is conceded by respondent, but he contends that petitioners are not entitled to a loss in 1947 because they have failed to meet their burden of proof in a number of important respects, viz, (1) they have not proved "recovery," including possession and uninterrupted possession and ownership, (2) they have not proved value, (3) they have not proved the identifiable event of loss after recovery, and (4) they have not proved the basis of the property.

We agree with respondent that important elements of proof are missing and sustain his determination. Though we have serious doubt that the record contains sufficient evidence to prove any of the elements necessary to establish the claimed loss we will assume, *arguendo,* that

petitioners have proved (1) that they "recovered" their bonds (though as a matter of fact they never lost possession), (2) the basis of the property, and (3) that the bonds had value in 1945. Even with these assumptions, petitioners cannot win.

We need not again set forth or discuss in detail the provisions of section 127 relied on by petitioners. That has been done in *Ervin Kenmore*, 18 T. C. 754, affd. (C. A. 2) 205 F. 2d 90; *Andrew P. Solt*, 19 T. C. 183; *Estate of Wladimir Von Dattan*, 22 T. C. 850; and *George Eres*, 23 T. C. 1.

From these cases we gather that the burden of bringing themselves within the sections of the Code providing for deductible losses (here section 23 (k) (2) "Securities Becoming Worthless" and section 127 "War Losses") is squarely on petitioners. Petitioners claim the bonds in question became worthless in 1947 and seek to take a deduction in that year. In order to sustain their burden in this respect, petitioners must not only show that the bonds had value at the end of 1946, but also must prove some "identifiable event" which establishes the subsequent loss in 1947. *San Joaquin Brick Co.* v. *Commissioner*, (C. A. 9) 130 F. 2d 220; *Estate of Wladimir Von Dattan*, *supra*. The evidence on this point is entirely inadequate to sustain petitioners' burden. We find no convincing evidence that the bonds held by petitioners had value in 1946. There is skimpy evidence relative to the year 1945 and we have given petitioners the benefit of the doubt by making a finding of fact relative to that year. The finding, however, deals only with the value of "comparable" bonds and it cannot be said with conviction that it applies to petitioners' bonds. The only unbiased testimony as to value is the testimony of a European banker, adduced by petitioners. On cross-interrogatory he was asked:

Did a public market exist for the bonds subsequent to December 12, 1941?

He answered:

Subsequent to December 12, 1941, there was a market for the bonds owned by British or French nationals, but not for the bonds owned by Americans.

There is no evidence to prove that petitioners were either British or French nationals.

Neither are we convinced that petitioners have proved any identifiable event in 1947 from which the fact of loss in that year can be established. On this point petitioner Abraham Feinstein testified in very general terms that during the first part of 1947 there was a market for the Rumanian bonds but that later in that year by reason of a treaty between Rumania and Switzerland it became impossible for any one other than a Swiss national to sell Rumanian bonds; further, that by reason of a "change" in the Rumanian Government, owners of such bonds gave up hope of being able to sell them. We cannot accept such general statements of an interested witness as

establishing either the fact of the treaty or the governmental change or that the bonds in question became worthless in 1947 due to such events. The mere assertion of the ultimate fact does not prove it.

We have carefully considered all evidence of record and conclude that petitioners have not met their burden of proof. In so doing, we have not overlooked the full testimony of the European banker and of petitioner Abraham Feinstein's brother, the only witnesses in addition to Abraham whose testimony is of record.

*Decision will be entered for the respondent.*