OPINION. Oppee, Judge: Several aspects of the situation presented to us remain obscure or entirely unexplained. The parties, however, are in complete if not emphatic agreement as to the sole issue for our decision and we shall of course accept the controversy in its present posture and dispose of that issue as best we may. But the statement of it may demonstrate the incidental questions which we shall not attempt to answer. Petitioner’s exchange of his old German bonds for new ones on June 24, 1954, appears to be viewed by the parties as the taxable event giving rise to capital gain, presumably measured by the difference between the basis of the old bonds and the value of the new. No dispute arises as to either of these figures, though they do not appear in the record. The sole issue, as repeatedly stated, is whether this gain is long-term or short-term, which in turn depends on how long the old bonds are deemed to have been held, which on its part is to be determined by when the old bonds were “recovered” within the meaning of section 127, I.R.C. 1939. This is because, although continually in existence and in fact in the physical possession of petitioner during a period that commenced before the war, they are considered as having been “destroyed” at the outbreak of hostilities, and as having been nonexistent during the war and for some time thereafter, Kenmore v. Commissioner, (C.A. 2) 205 F. 2d 90, affirming Ervin Kenmore, infra — just how long is the only question. The primary purpose of the recovery provision appears not to affect this case at all. That, of course, was to ensure that losses which had been allowed as deductions against ordinary income and had hence reduced the tax payable by the taxpayer in some prior year would be taken up in income when what had been “lost” was finally “recovered.” Basically the aim was to restore the revenue to its original position. “* * * § 127(a) (2) is to be read as though the property had ceased to exist during the period of enemy occupation. The plan of the statute was to treat its value on the date of the declaration of war as a deductible loss, and to treat any ‘recovery’ as income or gain * * Kenmore v. Commissioner, supra. The significance of the “recovery” in the instant situation, is however not to determine what should be reported by petitioner as income on that account, nor when it should be so reported, nor even its value at the time of recovery for the fixing of basis. We must assume that no problems have arisen in any of these areas. The importance of the recovery date is solely that it establishes the time of a kind of constructive acquisition, and hence marks the beginning of petitioner’s holding period for capital gains tax purposes. Nevertheless, petitioner says: “In his 1954 Tax Return Petitioner paid tax on the January 11, 1954 value of the old bonds as long-term capital gains. ” (Emphasis added.) Now one of the curious elements is that January 11, 1954, is the same date as that upon which respondent contends the old bonds were recovered. But recovery is not the taxable event, as far as he is concerned. Rather, that is, as we have said, and as apparently petitioner agrees, the subsequent exchange for the new bonds. And petitioner’s contention — now, at least — is that January 11, 1954, was not the date of recovery of the old bonds at all, but that this occurred sometime in 1953 at the latest. There is no suggestion, however, as to whether anything was —or should have been — reported as income in that year on account of the recovery of the old bonds. On the narrow issue actually before us, we think petitioner must prevail. Recovery is not defined or clarified in the statute as the original loss was. We called attention to this distinction in Ervin Kenmore, 18 T.C. 754, 758, for example, where we went on to say: In such circumstances, we think that Congress meant that, in order for subsection (c) to apply and in order that a taxpayer be required to include the value of the property previously considered as having been lost or destroyed in gross income, there should be the occurrence of some act of repossession, or the obtaining again of actual control, before there would be recovery within the meaning of the statute * * * Respondent’s counsel made it clear at the time this case was presented that the issue here was to be treated as purely one of fact. But under the present circumstances, we shall not, as in Ervin Kenmore, supra, be able to isolate the determinative fact by resort to an “act of repossession” or the reacquisition of “actual control.” It was not the loss of possession or control that caused the destruction here, but rather the presumed repudiation and unwillingness to pay on the part of the debtor. The bonds, if not the debt they represented, belonged to petitioner and were physically in his possession all the time. What was required to reconstitute the property in this case was a restoration of status to the debt. Just as its validity was lost for practical purposes because it became uncollectible when war was declared, see Bella Feinstein, 24 T.C. 656; Ervin Kenmore, supra, so we think the recovery arose when the validity of the debt was restored by the acknowledgment by the debtor and the establishment of machinery for recognition of that acknowledgment and for the resumption of payments. We need not say which of the long series of steps leading to this ultimate accomplishment might be thought of as decisive — the German declaration, negotiation of the agreement, passage of the German enabling legislation, ratification by the United States, the President’s proclamation,[1] or even the date when validation commenced. At least by the time petitioner’s bonds were submitted for validation early in December 1953, with the assurance that they would be accepted[2] and returned, we think all the necessary steps to the “recovery” had been taken, and that accordingly the holding period was in excess of 6 months. Decision will be entered umder Bule 50. The agreements were published under Presidential Proclamation of Nov. 4, 1953, as being effective Sept. 16, 1953, 4 U.S. Treaties (Part 1, 1953) 794. "[T]he subsequent validation would simply confirm the fact that the bond was valid on the recovery date.” (Rev. Rul. 54—501, 1954—2 C.B. 197, 2011.)