Stanley Kupiszewski and Joanna Kupiszewski v. Commissioner.
Kupiszewski v. Commissioner
Docket No. 90087.
United States Tax Court
T.C. Memo 1964-258; 1964 Tax Ct. Memo LEXIS 79; 23 T.C.M. (CCH) 1559; T.C.M. (RIA) 64258; September 30, 1964
*79 1. Held, the sale of the Harlem Avenue property occurred in 1957 as stipulated by the parties, and not in some other year as contended by petitioners and petitioners therefore realized taxable income from the sale of capital assets of $65,476.93 in lieu of $17,641.35 as reported by them in their 1957 return. 2. Held, petitioners are entitled to a casualty loss deduction under section 165(a) and (c)(3), I.R.C. 1954, of $7,500 due to the freezing of asparagus plumosus ferns during the winter of 1957. Cohan v. Commissioner, 39 F. 2d 540, applied. 3. Held, petitioners are not entitled to any loss from worthless Polish bonds during the year 1957. Stanley D. Kupiszewski, Jr., 434 W. Oakdale, Chicago, Ill., for the petitioners. Jones E. Davis, for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: Respondent determined a deficiency in income tax for the calendar year 1957 in the amount of $19,782.55. Through new issues raised in the petition and amended petition petitioners claim an overpayment for this year of the tax liability disclosed by their return of $2,597.63, together with a loss carryback and carryforward of amounts approximating $57,294.41. Two *80 of the five issues raised in the amended petition were conceded by petitioners in a stipulation of facts. The three remaining issues are: (1) Whether the respondent erred in determining that petitioners realized taxable income from the sale of capital assets in the amount of $65,476.93 in lieu of $17,641.35 reported by petitioners in their 1957 joint income tax return; (2) whether petitioners are entitled to a casualty loss deduction of approximately $40,000 due to the freezing of asparagus plumosus ferns during the year 1957; and (3) whether petitioners are entitled to a loss deduction of approximately $2,000 due to the worthlessness of certain Polish bonds acquired by petitioners prior to World War II. Findings of Fact Some of the facts were stipulated and are incorporated herein by reference. Petitioners are husband and wife and reside at the Walesbilt Hotel in Lake Wales, Fla. They filed their joint Federal income tax return for the calendar year 1957 with the district director of internal revenue, Jacksonville, Fla. Issue 1 On January 15, 1957, petitioners sold a parcel of land, 400 feet by 1,000 feet, located on Harlem Avenue, Chicago, Ill., for an amount of $175,000, receiving *81 an amount of $75,000 on January 15, 1957, and the balance payable over a period of four years. They reported capital gains and losses on their Federal income tax return for 1957 as follows: Item
Amount
Lake Formosa Drive, Orlando, Fla.,
dwelling
($ 3,665.80)
Eltamonte Springs, Fla., house
3,678.40
Partnership and fiduciaries
35,270.10
Net long-term gain
$ 35,282.70
Less 50%
17,641.35
Taxable gain from sale of capital
assets
$ 17,641.35 The capital gain covering the Harlem Avenue property was included in the partnership and fiduciaries item as $35,270.10. It was computed as follows: Item
Amount
Sales price
$175,000.00
Selling expense claimed
$ 7,599.08
Adjusted cost basis
43,955.55
51,554.63
Profit
$123,445.37
1957 - Installment profit reported
3/7 X $123,445.37 =
$ 52,905.15
Partnership profit reported
by: Petitioners
$ 35,270.10
Stanley D. Kupiszewski, Jr.
17,635.05
$ 52,905.15
No partnership return, Form 1065, was filed for the taxable year 1957 by petitioners and petitioners' son, Stanley D. Kupiszewski, Jr. No such partnership existed in 1957 or in earlier taxable years. The complete gain on the Harlem Avenue property is taxable to petitioners and no part thereof is taxable to the son. In the statutory notice of *82 deficiency the respondent determined that petitioners realized capital gains in 1957 of $65,476.93 in lieu of $17,641.35 as reported by petitioners, increasing the capital gains as reported by $47,835.58, as follows: Item
Amount
Lake Formosa Dr., Orlando, Fla.
Loss disallowed - personal residence
None
Eltamonte Springs, Fla. - house
$ 4,421.40
Harlem Ave., Chicago, Ill., property
126,532.45
Total
130,953.85
Less 1/2 of above
65,476.93
Corrected capital gain
65,476.93
Reported capital gain
17,641.35
Increase in capital gains
$ 47,835.58
The Harlem Avenue gain is as fol-
lows: Sales price
$175,000.00
Selling expenses
$ 4,512.00
Adjusted cost basis
43,955.55
48,467.55
Profit
$126,532.45 Issue 2 On January 18, 1957, petitioners purchased for the amount of $75,000 245 acres of real property, improvements thereon, and certain personal property in Volusia County, Fla., known as the Good Shepherd Monastery. This property hereinafter will be referred to as the monastery property. The asking price by the seller of the monastery property to the petitioners was $125,000. The monastery property purchased by the petitioners is described in the warranty deed executed January 18, 1957, as follows: * * * [A tract of land] * *83 * * containing 245 acres more or less in * * * [Volusia County, Florida] * * *, together with installations and improvements situated thereon known as The Good Shepherd Monastery, together with all furnishings and fixtures contained therein excepting books, religious items and personal belongings therein, also one Ford Tractor, Mower, discs, road grader and sundry farm tools and implements, together with all cattle on said premises. There were 11 or 12 head of cattle on the monastery property that were included in the sale of the property to petitioners. At the time petitioners bought the monastery property there was included in the 245 acres approximately 40 acres of natural wild live oak trees, under which trees had been planted asparagus plumosus ferns. The ferns had been planted under the oaks in order to protect them from the sun. The ferns were about three-quarters grown at the time of the purchase. Petitioners had intended to sell the ferns at a profit. Neither the trees nor the ferns were specifically mentioned in the warranty deed. Petitioner Stanley Kupiszewski never had any prior training or knowledge of the fern business at the time petitioners purchased the monastery property *84 in 1957. Commercial fern growers usually have provisions for heating the ferns on cold nights. Petitioners had no such provisions. The ferns were not slatted and were grown under the oaks without irrigation and without fertilization and were for those reasons inferior to ferns grown by professionals. Early in December 1957 a severe freeze occurred in the northern part of the State of Florida. At that time the ferns had practically matured. Immediately before the freeze the ferns had a fair market value, apart from the land, of substantially more than their cost, hereinafter stated. Immediately after the freeze the ferns had no fair market value. About 30 months after petitioners had purchased the monastery property for $75,000 when the asking price was $125,000, namely, on July 29, 1959, petitioners executed an "Agreement For Deed" covering 40 acres of the 245 acres of monastery property, including furniture and fixtures as per an inventory attached to the agreement, to Volusia Manor School for an amount of $125,000. The agreement, among other things, provided that petitioners were to give the buyers a warranty deed at such time as the principal payment made on the property shall equal *85 20 percent of the total purchase price. Petitioners made no breakdown of the $75,000 paid for the monastery property as to the value of its various components, including the ferns here at issue. The ferns had been pointed out to petitioners by the seller of the property but no other mention was made of them. The value of the ferns at the time petitioners purchased the property did not have any material effect on the purchase price of the property. Petitioners did not claim a loss for tax purposes from the freezing of the ferns on their joint Federal income tax return filed for the calendar year 1957. Their first claim for a loss was in the original and amended petitions filed with this Court. Issue 3 Petitioners are holders of certain bonds issued by the Polish Government. Some of the bonds had maturity dates from 1939 to 1943, and 1955. Petitioners did not claim a loss for tax purposes from worthless Polish bonds on their joint income tax return filed for the taxable year 1957. Petitioners first claimed a tax loss from worthless Polish bonds in the amended petition lodged with the Tax Court on September 6, 1962. The Polish bonds in possession of the petitioners and introduced into *86 evidence are summarized as follows: Face Value
Face Value
Aggregate Face
Year
No.
per Bond in
per Bond in
Value in
Issued
Held
Polish Zlotys
American Dollars
American Dollars
1931
5
*
$ 5.00 *
$ 25.00
1935
5
100
18,875 **
94.38 **
1936
29
4,500
849,375
24,631.88
1937
14
1,000
189,230
2,649.22
1937
8
500
94,615
746.92
$28,157.40
In 1947 petitioners were told, on presenting some of the bonds for payment, that the Polish Government was not ready to pay them at that time and that petitioners would have to wait until such time as was allotted for payment of them. None of these bonds held by the petitioners has ever been redeemed or called by the Polish Government. Interest coupons on the bonds have not been clipped or presented for payment since 1937. Ultimate Findings of Fact 1. The sale of the Harlem Avenue property occurred in the year 1957 and not in some other year. 2. Seventy-five hundred dollars of the $75,000 paid by petitioners for the monastery property is allocated to the asparagus plumosus ferns that were on the property when purchased by petitioners. Due to the freeze that occurred in December 1957, petitioners are *87 entitled to deduct the amount of $7,500 as a loss in 1957 under section 165 of the Internal Revenue Code of 1954. 3. Petitioners are not entitled to any loss from worthless Polish bonds during the year 1957. Opinion Issue 1 Notwithstanding the fact that on their return for 1957 petitioners reported a capital gain from the sale in that year of the Harlem Avenue property and, notwithstanding the stipulation of facts signed by the parties that "On January 15, 1957, petitioners sold" the Harlem Avenue property, petitioners ask us to find that no such sale occurred in the year 1957 and that, therefore, no amount should be included in petitioners' income in 1957 on account thereof. We see no merit in petitioners' position. Rule 31(b)(6) of our Rules of Practice is printed in the margin. [1] Even if we disregarded the stipulation that the sale of the Harlem Avenue property occurred on January 15, 1957, we do not think petitioners have established that the sale did not take place in that year. They offered no evidence that would overcome the presumption of correctness of the respondent's determination. Furthermore, it must be remembered that petitioners originally reported in their 1957 return *88 the sale as occurring in that year. They have not shown that they were in error in so doing. We see nothing from the record that would justify us in setting aside the stipulation of facts in whole or in part. There is nothing in the record to show that the stipulation of facts is in error. Under these circumstances, we find as a fact and hold that the Harlem Avenue property was sold on January 15, 1957, and that respondent did not err in determining that petitioners realized taxable income from the sale of capital assets in the amount of $65,476.93 in lieu of $17,641.35 reported by petitioners in their 1957 joint income tax return. Issue 2 Under this issue petitioners claim a casualty loss deduction under section 165 [2] *89 of the Internal Revenue Code of 1954 of approximately $40,000 due to the freezing of asparagus plumosus ferns during the winter of 1957. We do not think petitioners' loss of the ferns was "incurred in a trade or business" as that phrase is used in section 165(c)(1) but we do hold that the loss was incurred in a "transaction entered into for profit" under section 165(c)(2) as we have found as a fact that petitioners had intended to sell the ferns *90 at a profit. It is obvious that the loss from the freeze was a "casualty" loss under section 165(c)(3) (see Clinton H. Mitchell, 42 T.C. , Aug. 26, 1964) and there is no evidence that petitioners were in any way "compensated for by insurance or otherwise" as that phrase is mentioned in section 165(a). The applicable Regulations are in the margin. [3] *91 Under these regulations, which we think correctly interpret the statute, the issue resolves itself into three questions of fact, namely, (1) the fair market value of the ferns immediately before the casualty, (2) the fair market value immediately after, and (3) the cost of the ferns. The first two questions of fact have been resolved in our findings. We are satisfied from the evidence that immediately before the freeze the ferns had a fair market value, apart from the land, of substantially more than their cost, and that immediately *92 after the freeze the ferns had no fair market value. Since the measure of any statutory loss is the "lesser" of the two factors mentioned in section 1.165-7(b)(i) and (ii) of the Regulations, supra, it is not necessary to find the precise fair market value of the ferns immediately before the freeze as long as we find that it was substantially more than their cost which is the "adjusted basis" referred to in section 1.165-7(b)(ii), supra. The third question of fact referred to above is what part of the $75,000 paid by petitioners for the monastery property should be allocated to the 40 acres of ferns, apart from the land itself. No allocation of the lump sum purchase price was made at the time of the purchase or at any other time. The ferns had been pointed out to petitioners by the seller but no other mention was made of them. The seller wanted $125,000 for the entire property but finally agreed to accept petitioners' cash offer of $75,000. No mention of the ferns was made in the deed although many other items such as the monastery, furnishings and fixtures, farm machinery and cattle were so mentioned. Petitioner Joanna Kupiszewski, when asked by the Court if she could make a reasonable *93 allocation of the $75,000 as to how much of it was applicable to the ferns and how much to something else, replied: Putting it that way, your Honor, I would say I would divide the purchase price in half to the loss of the ferns * * *. We cannot accept that testimony at face value. If that were true, it would seem that more would have been said about the ferns at the time of the purchase and that they would have been specifically mentioned in the deed. Furthermore, such testimony is entirely out of line with the testimony of George H. Kittredge offered by the respondent. Kittredge was the real estate agent through whom petitioners purchased the monastery property. He had been in the real estate business for about 35 years. He testified that he had received the listing of this property from a company in Miami; that he inspected the property and thought it was worth the asking price of $125,000; that when he inspected the property the primary thing that was of interest to him was the monastery buildings [4] situated on about 245 acres of beautiful high rolling land; that he advertised the property in the Orlando papers; that petitioners answered his advertisement and told him they were *94 interested in the property; and that he took petitioners for two different inspections of the property. Kittredge further testified as follows: Q. In the transactions that took place between Mr. and Mrs. Kupiszewski and yourself concerning the sale of this property, to your knowledge was there any mention of any asparagus plumosa ferns? A. Yes. Q. Would you tell the court your recollection, what mention there was made of these ferns? A. Well, on our first interview with Father Peeples, he pointed out, you know, the fernery there as it was at the time, and he called our attention to it. Of course, we had seen it in our former inspection when he was not there. Father Peeples merely pointed out, you know, where the fernery was located. So he showed us different spots, you know, in front of the monastery there under the trees at the time where the ferns were growing. Q. Was there any other mention, to your knowledge, of the ferns? A. No. Q. In your opinion as a real estate dealer, do you feel that the value of the ferns either one way or the other would have had any effect on the sales price of this property? A. Personally I don't thing so. I hadn't included anything pertaining to the *95 ferns or the crop as it was at the time, never had referred to it in my contract in any way. * * *
Q. In your opinion, did these ferns have any value one way or the other in the sales price of this property? A. I would say they had no particular bearing on the sale of this property. The burden of proof was upon petitioners to establish the cost of the ferns that were on the property at the time the property was purchased. We think they have failed in their burden. However, we think that based upon the entire record some part of the total cost of $75,000 should be allocated to the 40 acres of ferns Bearing heavily against the petitioners and taking into consideration the entire record, our best judgment is that of the total purchase price of $75,000 no more than $7,500, or $187.50 an acre, should be allocated to the asparagus plumosus ferns that were on the monastery property when petitioners purchased it on January 18, 1957. We have so *96 found as an ultimate fact. Cohan v. Commissioner, 39 F. 2d 540. It remans only for us to determine the amount of the loss. Under section 1.165-7(b)(i) and (ii), supra, the "lesser" of the two factors there mentioned is the adjusted basis which we have found to be $7,500. We hold that petitioners are entitled to a casualty loss deduction of $7,500 due to the freezing of asparagus plumosus ferns during the winter of 1957. Issue 3 Petitioners claim that the Polish bonds held by them since prior to World War II became worthless during 1957 and that they are entitled to a deduction for worthless securities under section 165(g)[5] *97 of the 1954 Code in the amount of $20,000. Photostatic copies of the bonds (61 in all) were admitted in evidence as petitioners' Exhibit 4. The bonds were printed in the Polish language without any English translation. They were issued during the years 1931 to 1937, inclusive, and have an aggregate face value of approximately 6,100 zlotys, or about $28,157.40 in American dollars according to the exchange rate in effect at the time of the issuance of the bonds. Very little need be said on this issue for the reason that petitioners have failed in their proof to establish a statutory loss of worthless securities. They have not established the cost basis of the bonds nor have they established the fact that the bonds became worthless during the taxable year 1957. The lack of either one of these factors is sufficient to deny the claimed deduction. Petitioner Stanley Kupiszewski said he could not remember what he paid for the bonds but thought it was "around $30,000." This without more cannot be accepted as proof of the cost of the bonds. Petitioner kept no records of his purchases and has not shown in what year the bonds were purchased. The issue date is shown on the bonds but not the date of their purchase *98 by petitioners. Petitioner Joanna Kupiszewski testified that her husband had $24,500 in 1935, 1936, or 1937 and after 1937 he did not have the money any longer. Petitioners would have us infer that $24,500 was the cost of the bonds. This we cannot do. Perhaps what is more important is the total lack of any proof that the bonds now held by petitioners became worthless during the taxable year 1957. Petitioners have received no payments of any kind, either principal or interest, since the second World War. We hold that petitioners have failed to prove that they are entitled to any loss from worthless Polish bonds during the taxable year 1957. Cf. Bella Feinstein, 24 T.C. 656. Decision will be entered under Rule 50. Footnotes
*. Dollar value shown on bonds. ↩
**. 1936 conversion rate used since the 1935 values were not available.↩
1. (6) No evidence received to alter or contradict. The Court may set aside a stipulation in whole or in part where justice requires, but otherwise will not receive evidence tending to qualify, change, or contradict any fact properly introduced into the record by stipulation.↩
2. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. (b) Amount of Deduction. - For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. (c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and (3) losses of property not connected with a trade or business, if such losses arise from * * * casualty * * *. The "adjusted basis" mentioned in section 165(b) "shall be the cost of such property * * *." Sections 1011 and 1012, I.R.C. 1954↩.
3. SEC. 1.165-7 Casualty losses. (a) In general - (1) Allowance of deduction. * * * The amount of a casualty loss shall be determined in accordance with paragraph (b) of this section. * * *
(b) Amount deductible - (1) General rule. In the case of any casualty loss whether or not incurred in a trade or business or in any transaction entered into for profit, the amount of loss to be taken into account for purposes of section 165(a) shall be the lesser of either - (i) The amount which is equal to the fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty; or (ii) The amount of the adjusted basis prescribed in § 1.1011-1 for determining the loss from the sale or other disposition of the property involved. * * *
(2) Aggregation of property for computing loss. (i) A loss incurred in a trade or business or in any transaction entered into for profit shall be determined under subparagraph (1) of this paragraph by reference to the single, identifiable property damaged or destroyed. Thus, for example, in determining the fair market value of the property before and after the casualty in a case where damage by casualty has occurred to a building and ornamental or fruit trees used in a trade or business, the decrease in value shall be measured by taking the building and trees into account separately, and not together as an integral part of the realty, and separate losses shall be determined for such building and trees.↩
4. Kittredge's view as to this would seem to be borne out by the fact that on July 29, 1959 (about 30 months after the purchase of the 245 acres for $75,000) petitioners found a party agreeing to pay $125,000 for the buildings and only 40 acres of land.↩
5. SEC. 165. LOSSES. (g) Worthless Securities. - (1) General Rule. - If any security which is a capital asset becomes worthless during the taxable year, the loss resulting therefrom shall, for purposes of this subtitle, be treated as a loss from the sale or exchange, on the last day of the taxable year, of a capital asset. (2) Security defined. - For purposes of this subsection, the term "security" means - * * *
(C) a bond * * * issued by a corporation or by a government or political subdivision thereof, with interest coupons or in registered form.↩