T.C. Memo. 1996-113

UNITED STATES TAX COURT

DENNIS R. SCHENK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21851-94.          Filed March 11, 1996.

Dennis R. Schenk, pro se.

<u>Michelle Or</u>, for respondent.

MEMORANDUM OPINION

NAMEROFF, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182.[1]  Respondent determined a deficiency in petitioner's 1988 Federal income tax in the amount of $1,009, plus an addition to

--------

[1]  All section references are to the Internal Revenue Code in effect for the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

tax under section 6651(a)(1) in the amount of $302.    The issues for decision are:  (1) Whether petitioner is entitled to a deduction for a nonbusiness bad debt under section 166; and (2) whether petitioner is liable for the addition to tax under section 6651(a)(1) for failure to timely file his income tax return.

At the time of the filing of this petition, petitioner resided in Simi Valley, California.  The stipulation of facts and attached documents are incorporated herein by this reference.

In 1988, petitioner was a car salesman and lived in Garden Grove, California.  Prior to and during 1988, petitioner and Roy Maxted (Maxted) were good friends.  Petitioner and Maxted are originally from Montana.  Petitioner was involved in a previous business venture with Maxted and socialized with Maxted when he visited Montana.  Petitioner kept in touch with Maxted through periodic telephone calls and occasional visits.

At the beginning of 1988, Maxted lived in Helena, Montana, and made car shades.[2]  The car shades were made of an aluminum-like material which was only produced on the east coast three to four times per year.  The car shades also had suction cups so that they could be fastened to the windshield.  Sometime in 1988, Maxted relocated to Phoenix, Arizona, to continue his car shade

---

[2]    Car shades are placed inside a car to block sunlight from coming through the windshield and heating the interior of the car.

operation. After Maxted's relocation, petitioner continued to maintain telephone contact with him. On several trips to California, Maxted visited petitioner.

Sometime before July 1988, Maxted telephoned petitioner and invited him to visit Phoenix to see his car-shade operation. During this conversation, Maxted indicated that he might need financial assistance to continue making car shades. Shortly thereafter, petitioner went to Phoenix to visit Maxted's operation. Petitioner went to the shop where the car shades were made and observed the construction of the car shades. Petitioner believed the car shades were constructed and packaged nicely.

Petitioner advanced $10,000 to Maxted via a cashier's check dated July 12, 1988. Petitioner believed Maxted would use the money to purchase a large quantity of the aluminum-like material from the east coast suppliers to construct a large quantity of car shades. Petitioner believed he would be fully repaid from the proceeds generated by sale of the car shades within 90 days. Petitioner did not take a promissory note or ask for collateral for the advance because he believed Maxted's word was good for the loan.

During the ensuing 90 days, Maxted advised petitioner that he purchased the materials and that he was constructing the car shades. Maxted also informed petitioner that he had appointments with K Mart and Pep Boys to show the car shades. After several

conversations, Maxted informed petitioner that he was having difficulty selling the car shades. Maxted did not repay petitioner within 90 days; however, he continued to advise petitioner that he would repay the advance when the car shades were sold.

Within the first few months of 1989, petitioner could not reach Maxted by telephone because the telephone line was disconnected. A month or two later, petitioner flew to Phoenix and visited the shop where the car shades were made. Someone at the shop informed petitioner that Maxted had moved out and was gone. Petitioner did not continue to call or look for Maxted. However, he occasionally inquired about Maxted's whereabouts from Maxted's family in Montana and various acquaintances; however, no one had any information about him.

Petitioner signed his 1988 Federal income tax return on February 11, 1992. However, petitioner did not file the return until August 19, 1992, because of various personal problems. Petitioner did not apply for an extension to file his 1988 return. On the Schedule D, Capital Gains and Losses, attached to the return, petitioner reported a nonbusiness bad debt of $10,000, resulting in a claimed short term capital loss of $3,000 for 1988 and a short term capital loss carryover to 1989 of $7,000.

Respondent contends that petitioner is not entitled to the nonbusiness bad debt deduction because petitioner failed to demonstrate that a bona fide debt existed between petitioner and Maxted. Further, assuming a bona fide debt existed, respondent maintains that petitioner failed to show that the debt became worthless in 1988.

Bad Debt

Section 166(a) provides a deduction for any debt which becomes worthless within the taxable year. A nonbusiness bad debt is considered a loss from the sale or exchange of a short term capital asset. Sec. 166(d)(1)(B).

Only a bona fide debt qualifies under section 166(a). Sec. 1.166-1(c), Income Tax Regs. Section 1.166-1(c), Income Tax Regs., defines a bona fide debt as "a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." The existence of a bona fide debt is a factual inquiry that turns on the facts and circumstances of the particular case, and the taxpayer bears the burden of proving that a bona fide debt existed. Dixie Dairies Corp. v. Commissioner, 74 T.C. 476, 493 (1980); Litton Business Sys., Inc. v. Commissioner, 61 T.C. 367, 377 (1973). However, the ultimate question is whether there was a genuine intention to create a debt, with a reasonable expectation of repayment, and whether that intention comports

with the economic reality of creating a debtor-creditor relationship.  Dixie Dairies Corp. v. Commissioner, supra at 494.

The objective indicia of a bona fide debt include whether a note or other evidence of indebtedness existed and whether interest was charged.  See Clark v. Commissioner, 18 T.C. 780, 783 (1952), affd. 205 F.2d 353 (2d Cir. 1953).  Also considered are the existence of security or collateral, the demand for repayment, records that may reflect the transaction as a loan, and the borrower's solvency at the time of the loan.  See Road Materials, Inc. v. Commissioner, 407 F.2d 1121 (4th Cir. 1969), affg. in part and vacating in part and remanding T.C. Memo. 1967-187; Zimmerman v. United States, 318 F.2d 611, 613 (9th Cir. 1963).

Petitioner and Maxted did not document their relationship through the issuance of a promissory note.  In addition, petitioner did not ask for collateral or security in exchange for the $10,000.  However, the absence of formal indicia of debt is not dispositive here.  Rather, the facts in the present case indicate petitioner's intent to create a debt.  Specifically, petitioner believed Maxted's word that he would repay the advance because of a previous business relationship with him and their Montana roots.  Further, petitioner visited Maxted's car-shade operation, observed the construction and packaging of the car

shades, and knew how the advance was to be used.  Thus, we believe petitioner genuinely intended to create a debt.

In addition, we believe there was a reasonable expectation of repayment.  When petitioner advanced the funds to Maxted, he expected to be fully repaid within 90 days.  By that time, petitioner believed the car shades would be constructed and sold.  Moreover, prior to advancing the funds, petitioner visited Maxted's operation to observe the construction and packaging of the car shades.  Petitioner advanced the funds specifically so that Maxted could purchase enough material to construct a large quantity of car shades.  Thus, petitioner could have reasonably concluded that Maxted would be financially capable of repaying the advance from the sale of these car shades.  Indeed, Maxted advised petitioner numerous times that the advance would be repaid once the car shades were sold.  In light of the evidence presented, we conclude that the obligation of Maxted to petitioner did constitute a bona fide debt under section 166.

A bad debt is deductible only in the year it becomes worthless.  <u>Denver & R. G. W. R. Co. v. Commissioner</u>, 32 T.C. 43, 56 (1959), affd. 279 F.2d 368 (10th Cir. 1960); <u>Feinstein v. Commissioner</u>, 24 T.C. 656, 658 (1955).  Petitioner has the burden of proving that the debt became worthless during the year in question.  Rule 142(a); <u>Estate of Mann v. United States</u>, 731 F.2d 267, 275 (5th Cir. 1984); <u>James A. Messer Co. v. Commissioner</u>, 57

T.C. 848, 861 (1972).  When or whether a debt became worthless is a question of fact, the answer to which lies in an examination of all the circumstances.  Boehm v. Commissioner, 326 U.S. 287, 293 (1945); Estate of Mann v. United States, supra at 275; Dallmeyer v. Commissioner, 14 T.C. 1282, 1291 (1950).  The taxpayer must show some identifiable event that proves worthlessness in the year claimed.  United States v. S.S. White Dental Manufacturing Co., 274 U.S. 398, 401 (1927); Dallmeyer v. Commissioner, supra at 1291-1292.  There is no standard test or formula for determining worthlessness within a given taxable year; the determination depends upon the particular facts and circumstances of the case.  Lucas v. American Code Co., 280 U.S. 445, 449 (1930); Crown v. Commissioner, 77 T.C. 582, 598 (1981); Dallmeyer v. Commissioner, supra at 1291.

Based on the record, we find that petitioner has failed to establish that the debt became worthless in 1988.  Petitioner advanced the funds to Maxted on July 12, 1988, and was not repaid within 90 days; i.e., by October 10, 1988.  However, petitioner continued telephone discussions with Maxted over the next several months.  When Maxted's telephone line was disconnected and petitioner visited the shop in Phoenix in early 1989, petitioner realized he would not get his money from Maxted.  On balance, we find a lack of proof that the debt became worthless in 1988.

Accordingly, petitioner is not entitled to a short term capital loss in 1988.

Section 6651

Section 6651(a)(1) imposes an addition to tax for failure to timely file a tax return unless it is shown that such failure was due to reasonable cause and not willful neglect.  It is petitioner's burden to show that he filed his return timely or that reasonable cause existed for his failure to timely file his return.  Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); Haden v. Commissioner, T.C. Memo. 1986-539; Carlin v. Commissioner, T.C. Memo. 1981-694.

Petitioner did not file his return until 1992 because of personal problems which he did not describe.  There is no evidence that petitioner's failure to file his return was due to reasonable cause and not willful neglect.  Accordingly, we sustain respondent on this issue.

Decision will be entered for respondent.