T.C. Summary Opinion 2008-44


UNITED STATES TAX COURT


MEHDI TAGHADOSS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 25116-06S.               Filed April 29, 2008.


Mehdi Taghadoss, pro se.

<u>Andrew M. Stroot</u>, for respondent.


DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect when the petition was filed.  Pursuant to section 7463(b),
the decision to be entered is not reviewable by any other court,
and this opinion shall not be treated as precedent for any other
case.  Unless otherwise indicated, subsequent section references
are to the Internal Revenue Code in effect for the year in issue,

and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a $25,545 deficiency in petitioner's 2003 Federal income tax. The issue for decision is whether petitioner is entitled to claim a $1,344,863 casualty or theft loss deduction for the loss of value in his WorldCom stock options and stock holdings (securities).

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received into evidence are incorporated herein by reference. At the time the petition was filed, petitioner resided in Virginia.

Petitioner was employed by the WorldCom Group (WorldCom) for 17 years. During the course of petitioner's employment, he received options to purchase shares of WorldCom stock that he exercised on October 31, 2001, for a "hold". Petitioner also acquired shares of WorldCom stock on the open market, through WorldCom's section 401(k) retirement plan, and through WorldCom's employee stock purchase plan (ESPP).

Unfortunately for the shareholders of WorldCom, it filed a chapter 11 bankruptcy petition on July 21, 2002. Fraudulent accounting practices by certain WorldCom officials contributed to WorldCom's bankruptcy filing. Bernard Ebbers, WorldCom's chief executive officer, was convicted of violating the securities laws

for fraud, conspiracy, and filing false financial statements with the Securities and Exchange Commission (SEC). Two other WorldCom officials pleaded guilty to fraud and conspiracy.

The bankruptcy filing and the fraudulent accounting practices caused the value of WorldCom securities to significantly decline. Because the value of petitioner's securities had severely declined, he claimed a $1,344,863 deduction for a casualty or theft loss on his 2003 Form 1040, U.S. Individual Income Tax Return. Petitioner's claimed casualty or theft loss consisted of the following: (1) $144,863 for "35,318 shares of WorldCom stock purchased"; (2) $450,000 for "17 years' worth of max 401(k) contribution with company match all in WorldCom stock"; and (3) $750,000 for "10 years' worth of stock options, fully vested". Petitioner claimed a $26,853 refund of all tax withheld on account of his claimed casualty or theft loss.

On October 31, 2003, the bankruptcy court confirmed WorldCom's plan of reorganization, and it emerged from bankruptcy on April 20, 2004. The plan of reorganization provided for the cancellation of certain junior interests, such as petitioner's, on its "Effective Date"; i.e., April 20, 2004. The bankruptcy court was aware that WorldCom's restated consolidated balance sheets for yearend 2001 showed that WorldCom was insolvent for that period. See In re WorldCom, Inc. No. 02-13533 (Bankr.

S.D.N.Y. Oct. 31, 2003) (discussing the confirmation of WorldCom's plan).[1]

After filing his 2003 Form 1040, petitioner received a statement from his broker (account statement) for the period March 1-28, 2004, listing the current price and value for his 31,083 securities as follows:

| Quantity | Current price | Current value |
| --- | --- | --- |
| 1,086 | $.021 | $23.67 |
| 9,999 | .021 | 217.98 |
| 8,900 | .021 | 194.02 |
| 9,999 | .021 | 217.98 |
| 1,099 | .021 | 23.96 |

On May 12, 2004, petitioner's broker issued a notification to petitioner that his 31,083 securities were no longer transferrable because WorldCom had closed its transfer books.

Respondent initiated an examination of petitioner's 2003 Form 1040 and disallowed petitioner's $1,344,863 claimed casualty or theft loss deduction, determining a $25,545 deficiency.

## Discussion

### I. Burden of Proof

The Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer has the burden to prove that the determinations are in error. Rule 142(a); Welch v.

---

[1] The Court takes judicial notice of the bankruptcy court's opinion. See Fed. R. Evid. 201; see also Jeanmarie v. Commissioner, T.C. Memo. 2003-337 (taking judicial notice of another court's decision).

<u>Helvering</u>, 290 U.S. 111, 115 (1933). But the burden of proof on factual issues that affect a taxpayer's tax liability may be shifted to the Commissioner if the taxpayer introduces credible evidence with respect to the issue. See sec. 7491(a)(1). Petitioner has not alleged or proven that section 7491(a) applies; accordingly, the burden remains on him. See <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992) (stating that deductions are strictly a matter of legislative grace, and taxpayers bear the burden of proving that they are entitled to claim the deduction).

## II. <u>Individuals' Loss Deductions</u>

Section 165(a) allows a deduction for any loss sustained during the taxable year and not compensated for by insurance or otherwise. With respect to individuals, deductions for losses are limited to losses: (1) Incurred in a trade or business; (2) incurred in a transaction for profit; or (3) of property not connected with a trade or business or a transaction entered into for profit if the losses arise from fire, storm, shipwreck, or other casualty, or from theft. Sec. 165(c). In order for the loss to be deductible, the loss must be evidenced by a closed and completed transaction, fixed by an identifiable event, and actually sustained during the taxable year. Sec. 1.165-1(b), Income Tax Regs.

A.  Casualty Loss

In Furer v. Commissioner, T.C. Memo. 1993-165, affd. without published opinion 33 F.3d 58 (9th Cir. 1994), the taxpayers claimed a casualty loss on account of their securities' decline in value that was attributable to a stock market crash.  The Court disallowed the loss stating:  "In order for a loss to qualify as a casualty loss it ordinarily must be the result of physical damage to the taxpayer's property."  Id.

Similar to Furer, there is no physical damage to petitioner's securities.  Rather, petitioner's losses arise from the misconduct of certain WorldCom officials, WorldCom's bankruptcy filings, and the liquidation of his securities pursuant to WorldCom's plan of reorganization.  Therefore, petitioner did not sustain a casualty loss within the meaning of section 165(c)(3).  See Matheson v. Commissioner, 54 F.2d 537, 539 (2d Cir. 1931), affg. 18 B.T.A. 674 (1930) (The term "casualty" includes an event that is "due to some sudden, unexpected, or unusual cause."); Coleman v. Commissioner, 76 T.C. 580, 589 (1981) (The term "casualty" includes an event that is similar in nature to a fire, storm, or shipwreck).  Accordingly, respondent's determination denying petitioner's $1,344,863 casualty loss is sustained.

B. <u>Theft Loss</u>

A loss arising from theft is treated as sustained "during the taxable year in which the taxpayer discovers such loss." Sec. 165(e); secs. 1.165-1(d)(3), 1.165-8(a)(2), Income Tax Regs. The term "theft" includes larceny, embezzlement, and robbery. Sec. 1.165-8(d), Income Tax Regs. Whether the fraudulent acts of corporate officials constitute a theft is determined by the law of the State where the loss was sustained, which the Court assumes occurred within petitioner's State of residence. Compare <u>Wanchek v. Commissioner</u>, T.C. Memo. 2007-366, with <u>Viehweg v. Commissioner</u>, 90 T.C. 1248 (1988), <u>Paine v. Commissioner</u>, 63 T.C. 736, 740 (1975), affd. without published opinion 523 F.2d 1053 (5th Cir. 1975), <u>Knowles v. Commissioner</u>, T.C. Memo. 1991-57, and <u>McCullough v. Commissioner</u>, T.C. Memo. 1990-653.

Under Virginia law, the term "larceny" is defined as "'the wrongful or fraudulent taking of personal goods of some intrinsic value, belonging to another, without his assent, and with the intention to deprive the owner thereof permanently.'" <u>Foster v. Commonwealth</u>, 606 S.E.2d 518, 519 (Va. Ct. App. 2004) (quoting <u>Dunlavey v. Commonwealth</u>, 35 S.E.2d 763, 764 (Va. 1945)), affd. 623 S.E.2d 902 (Va. 2006). The term also includes embezzlement, false pretenses, and receiving stolen property knowing it to be stolen. See Va. Code Ann. secs. 18.2-95, -96, -108, -111, -178 (2008); see also <u>Bruhn v. Commonwealth</u> 559 S.E.2d 880, 883 n.2

(Va. Ct. App. 2002) (and cases cited threat), affd. 570 S.E.2d
866 (Va. 2002). Intent is an essential element of each, and if
the theft is accomplished by false pretenses, the false pretenses
must have induced the person to part with money or property. See
Va. Code Ann. secs. 18.2-95, -96, -108, -111, -178; see also
Parker v. Commonwealth, 654 S.E.2d 580, 582 (Va. 2008).

Although certain WorldCom officials caused the publication
of fraudulent financial statements and filed the statements with
the SEC, the Court finds that petitioner has failed to prove that
he suffered a theft under Virginia law. There is no evidence in
the record establishing that WorldCom officials wrongfully took
petitioner's money or property (i.e., the value of his
securities) with the requisite intent to deprive him permanently
thereof. Moreover, petitioner did not purchase his securities
from the WorldCom officials; rather, his acquisitions were
conducted through brokers on the open market, through WorldCom's
section 401(k) retirement plan, and through WorldCom's ESPP. The
WorldCom officials had no direct dealings with petitioner. In
this respect the Court finds this case indistinguishable from
Paine v. Commissioner, supra, where a theft loss deduction was
denied. See also Barry v. Commissioner, T.C. Memo. 1978-215
(denying a theft loss deduction involving similar circumstances).
But see Vietzke v. Commissioner, 37 T.C. 504, 511 (1961)
(taxpayer's theft loss deduction was allowed because he showed

that he departed with his money in reliance on the offering material's information, he dealt directly with the directors in his acquisition of the stock, and the directors effectively absconded with the offering proceeds); Rev. Rul. 71-381, 1971-2 C.B. 126 (taxpayer's theft loss deduction was allowed where taxpayer lent money to the corporation in exchange for a note, the corporation issued fraudulent financial reports to the taxpayer, and he relied on that information in deciding to invest).

Petitioner testified that he received several memos "in which they told us that everything is fine". But petitioner has failed to establish that he relied on the misrepresentations in the memos and the financial statements and that his losses were related to the misrepresentations. To establish a causal connection between the fraudulent representations and petitioner's purchases and his decision(s) to retain his securities, the representations must have been made before petitioner's purchases and his decision(s) to retain his securities. See Paine v. Commissioner, supra at 742. There is no evidence in the record indicating that petitioner relied on the fraudulent financial statements or the memos when he purchased his securities. Because petitioner did not provide the memos to respondent or produce them at trial, petitioner has also failed to establish that he relied on the alleged

misrepresentations in the memos in deciding to retain his securities. The Court finds that petitioner has failed to show that the misrepresentations induced him to part with his money or property (i.e., the value of the securities) and thus constitute false pretenses.

To the extent that petitioner is attempting to claim a deduction for the corporation's theft loss rather than his own theft loss, he cannot do so. It is well settled that a corporation is a taxable entity separate from its shareholders. Moline Props., Inc. v. Commissioner, 319 U.S. 436, 438-439 (1943). Consequently, shareholders generally cannot claim a deduction for a theft loss where the corporation itself was the victim of the theft. See Malik v. Commissioner, T.C. Memo. 1995-204. But see Vietzke v. Commisioner, supra at 511 (taxpayer's theft loss deduction was allowed because the Court found that the corporate entity was nothing more than a device to swindle the investors). Unlike the record in Vietzke, however, the record in this case does not support an inference that WorldCom was nothing more than a device to defraud its investors.

Although the Court sympathizes with petitioner's circumstances, the Court concludes that section 165(c)(3) does not support the allowance of his claimed theft loss deduction. Accordingly, respondent's determination denying a $1,344,863 theft loss deduction is sustained.

C.  Worthless Securities

Although the issue was not raised by the parties, the Court has considered the possibility that petitioner's losses might be deductible as worthless securities.

If a security that is a capital asset with respect to the taxpayer is sold, exchanged, or becomes "wholly" worthless during the taxable year, the loss resulting therefrom is treated as a loss arising from the sale or exchange of a capital asset on the last day of the taxable year.  Sec. 165(g)(1); sec. 1.165-5(b) and (c), Income Tax Regs.; see also Ark. Best Corp. v. Commissioner, 800 F.2d 215, 218-220 (8th Cir. 1986) (stating that securities are a capital asset unless the taxpayer is a securities dealer or the securities fall within one of the exceptions in section 1221) (citing Campbell Taggart, Inc. v. United States, 744 F.2d 442, 449 (5th Cir. 1984)), affd. 485 U.S. 212 (1988).

Section 1.165-4(a), Income Tax Regs., imposes a further limitation:  no deduction for a loss is allowed under section 165(a) solely because of a decline in the stock's value when the decline is attributable to a fluctuation in the stock's market price or to similar causes.  See also sec. 1.165-5(f), Income Tax Regs. (imposing a similar limitation for securities).  Mere shrinkage in a stock's value does not give rise to a deduction for a loss under section 165(a) "if the stock has any

recognizable value on the date claimed as the date of loss."
Sec. 1.165-4(a), Income Tax Regs.  No loss is allowed for a
decline in a stock's value unless the stock is sold, exchanged,
or has become "wholly" worthless (subject to the limitations on
capital losses).  Secs. 1.165-4(a), 1.165-5(c), Income Tax Regs.

In order to have deductible losses, petitioner must show
that his securities had value at the end of 2002 and prove some
identifiable event that establishes the subsequent losses in
2003.  Popovich v. Commissioner, T.C. Memo. 1965-174 (citing
Feinstein v. Commissioner, 24 T.C. 656, 657-658 (1955)).

Petitioner has failed to establish both elements.  There is
no evidence as to the value of petitioner's securities in 2002.
Moreover, petitioner's evidence, the account statement, indicates
that his securities had retained some value in 2004.  The record
does contain countervailing facts:  (1) WorldCom was insolvent in
2001 and filed for bankruptcy in 2002; (2) the plan of
reorganization provided for the cancellation of petitioner's
securities; (3) petitioner "abandoned" his securities in 2003;
and (4) WorldCom closed their transfer books in 2004.  But it was
petitioner's burden to show that his securities had no value in
2003.  Compare Ruud v. Commissioner, T.C. Memo. 1969-252 (stock
was worthless before the bankruptcy filing), with Steadman v.
Commissioner, 50 T.C. 369, 376-77 (1968) (bankruptcy filing is an
identifiable event indicative of worthlessness), affd. 424 F.2d 1

(6th Cir. 1970)), <u>Delk v. Commissioner</u>, 113 F.3d 984, 986 (9th Cir. 1997) (cancellation of shares pursuant to a plan of reorganization is an identifiable event), revg. T.C. Memo. 1995-265, <u>In re Steffen</u>, 294 Bankr. 388, 393 (Bankr. M.D. Fla. 2003) (neither the filing of a bankruptcy petition nor confirmation of a plan canceling stock is an identifiable event), and <u>Boehm v Commissioner</u>, 326 U.S. 287 (1945) (taxpayer's subjective belief as to worthlessness is a factor to consider).  Therefore, the Court concludes that petitioner's losses are not deductible as worthless securities in 2003.[2]

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.

---

[2]  Even if the Court were to find that petitioner sustained a casualty or theft loss or that his securities were "wholly" worthless in 2003, the Court would nevertheless disallow the losses because petitioner failed to establish that there was no reasonable prospect of recovering his losses.  See secs. 1.165-1(c)(4), (d)(2)(I), 1.165-8(a)(2), Income Tax Regs. Compare 15 U.S.C. secs. 77k, 77l(a)(2), 77o, 78j(b), 78t(a) (2000) and Rule 10b-5 (17 C.F.R. sec. 240.10b-5 (2007)) thereunder (provisions relating to securities law violations and liability therefor), with 15 U.S.C. sec. 7246 (2000) (discussing a disgorgement fund for the benefit of the victims of violations of certain securities laws).