## BRUMBACK v. DENMAN.
### No. 3316.

District Court, N. D. Ohio, W. D.
Nov. 14, 1930.

John S. Brumback and Orville S. Brumback, both of Toledo, Ohio, for plaintiff.

Eugene Angevine, Sol. for Department of Internal Revenue, of Washington, D. C., and Lee N. Murlin, U. S. Atty., of Toledo, Ohio, for the United States.

HAHN, District Judge.

This is an action to recover a deficiency assessment of United States income tax in the amount of $3,069.15, assessed and collected by the defendant from the plaintiff for the calendar year 1922. In that year the plaintiff in his return deducted a loss incurred in land in the Bitter Root Valley in Ravalli county, Mont., purchased in 1912. The plaintiff purchased and owned in fee simple a one-half interest in 130 acres of undeveloped, arid land that was exploited for fruit-raising possibilities, and which to that end was dependent upon artificial irrigation. His venture was for purposes of resale and speculation. The irrigation was furnished by the Bitter Root Valley Irrigation Company, a private corporation which, in about 1908, constructed an irrigation canal some 70 miles in length. By 1920 a large part of the wooden flumes and water lines constructed by the irrigation company was badly deteriorated and in need of repair and rebuilding, but the irrigation company was then insolvent and in the hands of a receiver. The landowners in the valley then formed a political organization under the laws of the state of Montana, known as the Bitter Root irrigation district, which purchased the irrigation canal and the old water system from the receiver of the irrigation company. The only way the irrigation district could function was by the issuance of bonds which were to be paid by taxes and assessments upon the lands in the Valley. Under the Montana law, and as a result of a court proceeding authorized by that law, an order was entered on the 24th day of June, 1922, in the district court of the Fourth judicial district of the state of Montana in and for the county of Ravalli, authorizing a bond issue in the aggregate amount of $1,140,000, and the "levying of a special tax or assessment upon all of the lands of the said Bitter Root Irrigation District to pay the principal and interest of said bonds when the same shall fall due."

In view of the history of the lands in the Bitter Root Valley, and the certainty of the placing of taxes and assessments upon the lands therein because of the proceedings just related, the salability and marketability of the land of the plaintiff was destroyed upon the entering of the court's order of June 24, 1922, and the same became worthless for the purposes of the plaintiff. The testimony does not leave any doubt upon this point. More than 40 per cent. of the lands were forfeited for taxes, and for at least six years no lands were sold at prices above the delinquent tax thereon. The plaintiff, upon whom rested the first duty of determining the matter, in the year 1922 concluded that the land was worthless, that he would take his loss as a result of the situation; thereupon, in 1922 he refused to pay further taxes upon the

property, charging it off on his books, and had no further transactions with relation to it, nor did he exercise further dominion over it. The taxes not being paid, the property was sold for taxes October 3, 1923, the legal title being transferred pursuant to the tax sale February 13, 1926. The plaintiff deducted the amount of his loss upon the property in his income tax report for the year 1922.

Both sides have argued the case as involving a construction of section 214 of the Revenue Act of 1921 (42 Stat. 239, 240), particularly that portion thereof which is as follows:

"Sec. 214. (a) That in computing net income there shall be allowed as deductions:
* * *

"(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business."

It is not argued that the regulations are helpful in determining the point upon which counsel agree that the case turns. The taxpayer argues that the property became absolutely worthless in the year 1922, and that he was entitled to claim the loss for that year. The government, relying upon the case of the Appeal of A. J. Schwarzler, 3 B. T. A., 535, (1926), argues that even if the property became worthless in the year 1922, the plaintiff could not have the benefit of the loss so long as he held the legal title to the property; that he was not divested of the legal title until February 13, 1926[1]; and that the plaintiff was entitled to claim the loss, not for 1922, but for the year 1926.

The reasoning of the Schwarzler Case, in so far as it is claimed to apply to this case, is represented by the following, at page 538:

"The testimony produced tends to show that the property in question had decreased in value, due to changes in the neighborhood, that it was not desirable as a building site, and that taxes had been permitted to accumulate against it until they equaled or exceeded its then value. Assuming all this to be true, the taxpayer did not sustain a loss in the taxable year. * * *

"Here there is no question but that the legal title to the property attempted to be abandoned was in the taxpayer, and remained in it until after the taxable year in question. *It could exercise dominion over it to the ex-*

---

[1] Although the property was sold for taxes October 3, 1923, the Revised Code of Montana, § 2201, allowed a period of redemption. Hence a deed for the property was not ordered until February 13, 1926.

*clusion of everyone else, and it is difficult to conceive how it could sustain a loss with respect to the property and still have the property to deal with as its own.* True, the value of the property may have declined by reason of changed conditions and the taxpayer's neglect to pay taxes thereon. In fact, every piece of property upon which taxes are permitted to accumulate and which is located in a neighborhood which has become undesirable, necessarily suffers a diminution in its market value, but it has never been held that a taxpayer could deduct as a loss the diminution in value of land the title to which is still retained, and the difference is one of degree only. Losses from dealing in real or personal property, growing out of the ownership thereof, are deductible only when ascertained and determined upon an actual, completed, and closed transaction during the taxable year, and are not sustained through the mental processes by which a taxpayer determines that the property is worthless and charges it off on its books, while it still retains the title to the property itself." (Italics supplied.)

Plaintiff denies that the Schwarzler Case should be applied to this case, and argues that his loss was established for income tax purposes by the court's order hereinabove referred to, and which was entered on the 24th day of June, 1922. Plaintiff relies upon the cases of United States v. White Dental Company, 274 U. S. 398, 47 S. Ct. 598, 600, 71 L. Ed. 1120, and Lucas v. American Code Company, 280 U. S. 445, 50 S. Ct. 202, 203, 74 L. Ed. 538. The pertinent excerpt from the White Dental Case, supra, is as follows:

"The case turns upon the question whether the loss, concededly sustained by the respondent through the seizure of the assets of the German company in 1918, was so evidenced by a closed transaction within the meaning of the quoted statute and treasury regulations as to authorize its deduction from gross income of that year. The statute obviously does not contemplate and the regulations (article 144) forbid the deduction of losses resulting from the mere fluctuation in value of property owned by the taxpayer. New York Ins. Co. v. Edwards, 271 U. S. 109, 116, 46 S. Ct. 436, 70 L. Ed. 859, cf. Miles v. Safe Deposit Co., 259 U. S. 247, 42 S. Ct. 483, 66 L. Ed. 923. But with equal certainty they do contemplate the deduction from gross income of losses, which are *fixed by identifiable events,* such as the sale of property (articles 141, 144), or caused by its destruction or physical injury (articles 141, 142, 143), or, in the case of debts, by the occurrence of such events as prevent their collection (article 151).

"The transaction evidencing the loss here was the seizure of the property of the German company. The loss resulted to the respondent because it was a creditor and stockholder of that company which, as a result of the sequestration, was left without property or assets of any kind." (Italics supplied.)

In the above excerpt the court refers to certain regulations, although the decision of the court was not based upon a regulation. It is not claimed that any regulation applies to this case, and no regulation which has been called to the court's attention makes it a condition precedent to the allowance of a loss that the taxpayer shall have been divested of title to the worthless property involved. In this case, therefore, as in the White Dental Co. Case, the interpretation of the statute alone is involved. However, any regulation to be valid must be subservient to the intent and purpose of the statute, and could not make that a condition to the allowance of a loss which would not be consistently required under the applicable statute.

The excerpt from the American Code Case, supra, is as follows:

"Generally speaking, the income tax law is concerned only with realized losses, as with realized gains. Weiss v. Weiner, 279 U. S. 333, 335, 49 S. Ct. 337, 73 L. Ed. 720. Exception is made, however, in the case of losses which are so reasonably certain in fact and ascertainable in amount as to justify their deduction, in certain circumstances, before they are absolutely realized. As respects losses occasioned by the taxpayer's breach of contract, no definite legal test is provided by the statute for the determination of the year in which the loss is to be deducted. The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal, test."

The thought underlying the principles applied in these cases decided by the Supreme Court of the United States seems to be that a taxpayer may have the benefit of a loss which is indicated by an identifiable event which marks or fixes the loss with reasonable (not absolute) certainty as to its occurrence and the amount thereof. Further, the test to be applied is a practical, not a legal, one. It seems to follow that it must depend largely, if not wholly, upon the facts relating to the particular loss. A change of title may establish a loss in one case; an order of a court may establish it in another[2]; but it

cannot be said categorically that there can never be a properly deductible loss in the case of real estate so long as the taxpayer holds the title. It seems to the court that it certainly cannot be said to be a condition precedent where, as here, there is present such an identifiable event of as far-reaching consequence as the court order relied upon in this case.

The government argues that the taxpayer's loss in this case was forecast some years before the entering of the court's order, and that, upon the taxpayer's theory, he might as logically have claimed the loss in years prior to the year 1922. But in this court's opinion such a claim, if made prior to the Montana court's order, would have been met by the government with the cases cited in the White Dental Case, and which hold: "The statute obviously does not contemplate ＊ ＊ ＊ deduction of losses resulting from the mere fluctuation in value of property owned by the taxpayer." United States v. White Dental Co., supra, at page 401 of 271 U. S., 47 S. Ct. 598, 600. In this case the entering of the court's order on June 24, 1922, was the decisive event.

The only portion of the court's opinion in the Schwarzler Case which is applicable then to this case is that which holds that a loss should not be allowed because the taxpayer still holds title, and thus may exercise dominion over the claimed worthless property. But the continuing power to exercise dominion over worthless property exists in the case of personal property, corporate stock, bad accounts, and other property where losses are generally (perhaps always) allowed without reference to questions of title to the property or the power to exercise dominion over the same. It appears in the White Dental Case, supra, that the taxpayer continued to hold title to the stock of the German company for every purpose, though the power to exercise dominion was temporarily suspended. However, it appears (at page 400 of 274 U. S., 47 S. Ct. 598, 599) that in 1922 the tangible assets and the lease of the German corporation were sold for the sum of $6,000, and the respondent was required to include that amount as income in its income tax report for that year.

The court is of the opinion that the rule of the Schwarzler Case should not be applied in this case. There was not in that case, as there is in this, an identifiable event such as the court's order of June 24, 1922, which

---

[2] In the American Code Case, supra, it was held that the deductible loss resulting from an employer's breach of a contract of employment was not established until litigation concerning the same was finally terminated; thus a court's order fixed the loss.

definitely fixed the taxpayer's loss regardless of questions of title.[3] There should be a judgment in favor of the plaintiff in the amount of $3,069.15, with interest. The requested special findings of fact may be formulated under rule 34 of this court. Exceptions are saved to the defendant. An order may be entered accordingly.

---

[3] It was said in the Schwarzler Case that losses "are not sustained through the mental processes by which a taxpayer determines that the property is worthless and charges it off on its books, while it still retains the title to the property itself." That might have been said of the plaintiff in this case if the plaintiff had attempted to charge off his loss in any year prior to 1922, when the Montana court entered its order. Upon the entering of that order the plaintiff here charged the property off on his books, exercised no further dominion over it, failed to pay the taxes on it, and every act of his thereafter was inconsistent with any thought on his part to exercise dominion over it. The plaintiff in the year 1923 received an installment of rent, but that was rent earned in the year 1922 and, as shown by the evidence, its transmittal to the plaintiff was delayed.