## MONMOUTH PLUMBING SUPPLY CO., Inc., v. UNITED STATES.

### No. 1587.

District Court, S. D. Florida.

Feb. 3, 1933.

Douglas D. Felix, of Miami, Fla., for plaintiff.

W. P. Hughes, U. S. Dist. Atty., of Jacksonville, Fla., and Raymond F. Brown, Sp. Asst. to U. S. Atty., of Miami, Fla.

RITTER, District Judge.

This cause comes on for final hearing upon the evidence submitted to the court and the argument of counsel, and the court, being advised in the premises, finds:

That this is an action brought by the plaintiff to obtain the return from the defendant of $1,350, with allowable interest by reason of their being a deductible loss of $10,000 from the net income reported to the Revenue Department for the year ending January 31, 1927, of $58,052.94. This deduction is claimed because 100 shares of the preferred capital stock of the Miami Giro Corporation, owned by the plaintiff, was worthless during the taxable year previous to January 31, 1927. The claim is asserted under section 234 (a) (4) of the Revenue Act of 1926, 26 US CA § 986 (a) (4), wherein it is provided that: "In computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions * * * losses sustained during the taxable year and not compensated for by insurance or otherwise."

Regulation 69 promulgated by the Commissioner of Internal Revenue in article 141 —46 of said regulations provides that a person possessing stock of a corporation cannot deduct from gross income any amount claimed as a loss merely on account of shrinkage in value through fluctuation of the market or otherwise, and that, if the stock of a corporation becomes worthless, it may be deducted by the owner in the taxable year in which the stock becomes worthless, provided a satisfactory showing of its worthlessness be made, as in the case of bad debts. The defendant claims that the stock is not shown to have been worthless during the taxable year as claimed.

The evidence discloses that the Miami Giro Corporation had been organized for the purpose of obtaining a fund by the sale of stock to loan to banks in Miami which were in an embarrassed situation financially, in the hope that said banks might not have to close their doors, and that such securities which might be taken by the said company from said banks, which were questionable and what might be called "frozen" assets, might be worked out eventually for some profit or the return of the money loaned. The details of the operation of the said corporation were disclosed in the evidence by witnesses Romfh and Fuzzard, each an experienced banker, and each an officer of the Miami Giro Corporation, who were active in the management of its affairs, Romfh being the president and Fuzzard the vice president and treasurer, and each a director of said corporation. The assets of the corporation were specifically testified to by these witnesses as to value thereof. They each testified that the stock of the Miami Giro Corporation in the year ending January 31, 1927, was worthless, in that it had no value that could be estimated; that the company had not been dissolved, but there was no hope of realizing any money from its assets; that these assets had been taken over from banks which had been compelled to close by reason of financial distress, and which were worthless, in fact. The details concerning each asset is in the evidence, and it is not necessary to detail the same here.

The evidence offered by the government was through an auditor who had made up a statement from the books of the Miami Giro Corporation, and gives the stock only book value, and testified that no appraisement of the assets had been made to ascertain actual value. Book value is notoriously not a safe guide for actual value. The witnesses for the plaintiff testified to actual value, and they

were expert and experienced men to so testify, and were thoroughly familiar by actually handling the Miami Giro Corporation assets to give the actual value.

The testimony further discloses that the securities held by the banks which the Miami Giro Corporation was organized to support were based largely, if not entirely, upon loans on real estate in Miami and vicinity; that there was a hurricane in Miami in September, 1926, which was of such severity that the properties upon which the securities were based were in many instances practically wrecked beyond repair, and in other instances so badly injured that no money was securable to put them in their former condition, and that values everywhere in the Miami district shrank tremendously. The assets, therefore, which were back of the stock of the Miami Giro Corporation were so depreciated that the officers of the Miami Giro Corporation considered the securities held as worthless, and many of the properties had been lost through tax sales, and the stocks among the assets were rendered worthless by the said hurricane and general financial distress which developed.

■ It is evident to me that the testimony warrants the conclusions that the said stock was, during the taxable year ending January 31, 1927, to all intents and purposes, and within the meaning of the law, worthless. The plaintiff, by the deduction of the $10,000 paid for said worthless stock, should have paid an income tax for the fiscal year ending January 31, 1927, on a net income of $48,052.94. The tax paid was $6,436.09. The plaintiff filed its claim for refund for the sum of $1,350 out of the tax so paid on February 16, 1928, and its claim was disallowed in entirety by the Commissioner of Internal Revenue on November 12, 1928.

Defendant has submitted authorities to show that the stock must have been valueless as a closed transaction during the said taxable year; that, if there is any value ascertainable, or if the corporation continues in business with a hope of securing some value, the deduction cannot be allowed. The cases of Royal Packing Company v. Lucas, Commissioner of Internal Revenue (C. C. A.) 38 F.(2d) 180, and W. P. Davis, Petitioner, v. Commissioner of Internal Revenue, 6 B. T. A. 1267, are not controlling here, for the reason as stated in the latter case: "Until it is clearly shown that stock owned in a corporation which is still in existence and has assets is in fact worthless and there is no probability that any portion of the investment will ever be recovered, no deductible loss under the statute has been sustained."

It is true that the term "loss sustained" conveys the idea of a final termination of a transaction in connection with which the investment was made and the loss claimed, but, as said in Appeal of Oscar K. Eysenbach, 10 B. T. A. 716, the loss of value cannot be sustained where there was some hope of making a sale or reorganizing. Counsel have cited cases holding that to justify the deduction it must be shown that the loss is evidenced by a closed transaction. I find, however, that the harshness of strict construction contended for by the defendant is not the rule adopted by the federal courts. In the case of Lucas v. American Code Company, 280 U. S. 445, 50 S. Ct. 202, 203, 74 L. Ed. 538, the court says, in reference to the provisions of the law which we are considering: "Generally speaking, the income tax law is concerned only with realized losses, as with realized gains. [Authority cited.] Exception is made, however, in the case of losses which are so reasonably certain in fact and ascertainable in amount as to justify their deduction, in certain circumstances, before they are absolutely realized. * * * The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal, test." Brumback v. Denman (D. C.) 48 F.(2d) 255; Davidson Grocery Co. v. Lucas, 59 App. D. C. 176, 37 F. (2d) 806; Royal Packing Co. v. Commissioner of Internal Revenue (C. C. A.) 22 F.(2d) 536.

The rule thus announced is well supported by the evidence that the stock in question was worthless since the hurricane of 1926.

■ I think the case of United States v. S. S. White Dental Manufacturing Company, 274 U. S. 398, 47 S. Ct. 598, 600, 71 L. Ed. 1120, is determinative of the law in this case. The court therein says, referring to the statute and the rules under consideration: "But with equal certainty they do contemplate the deduction from gross income of losses, which are fixed by identifiable events, such as the sale of property (article 141, 144), or caused by its destruction or physical injury (article 141, 142, 143), or, in the case of debts, by the occurrence of such events as prevent their collection (article 151). * * * The quoted regulations, consistently with the statute, contemplate that a loss may become complete enough for deduction without the taxpayer's establishing that there is no possibility of an

eventual recoupment. \* \* \* The taxing act does not require the taxpayer to be an incorrigible optimist."

It would certainly require "incorrigible optimism" to find that the stock of the Miami Giro Corporation had any value or the possibility of value on January 31, 1927.

In Appeal of Remington Typewriter Co., 4 B. T. A. 880, the United States Board of Tax Appeals says: "The fact that the shell of a worthless corporation continues in business is no bar to the deduction of an investment in that corporation's stock when all facts clearly indicate the stock to be worthless."

It is my conclusion, therefore, that the plaintiff is entitled to a judgment for $1,350, together with interest thereon at the rate of 4 per cent. per annum from January 19, 1928, and an order may be so drawn, and all motions of the defendant are overruled.