### JONES et al. v. COMMISSIONER OF INTERNAL REVENUE.
#### No. 8952.

Circuit Court of Appeals, Ninth Circuit.
April 12, 1939.

As Modified on Denial of Rehearing
June 2, 1939.

682

Veazie & Veazie, of Portland, Or., for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, Arthur A. Armstrong, and Edward F. McMahon, Sp. Assts. to Atty. Gen., for respondent.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

GARRECHT, Circuit Judge.

In 1927, 1928 and 1929, Clayton R. Jones acquired 235 shares of the stock of the Hibernia Commercial & Savings Bank of Portland, Oregon, for himself, and 70 shares for W. J. Jones & Son, Inc., a total of 305 shares. The 235 shares of said stock cost Clayton R. Jones $32,920, and the 70 shares thereof cost W. J. Jones & Son, Inc., $12,000.

The Board of Tax Appeals made findings of fact, substantially as follows:

Certain assets of the Hibernia Commercial & Savings Bank were not satisfactory to the State Banking Commissioner of Oregon and, late in 1928, the Hibernia Securities Company was formed to take over or assume the non-admissible assets of the bank. The Bank declared a special dividend out of the non-admissible assets to pay up the capital stock of the Securities Company, which consisted of 5000 shares of a par value of $20 per share. This stock was issued to the Bank's officers as trustees for its stockholders, each stockholder being entitled to one beneficial interest in a share of the new corporation's stock for each share of Bank stock held.

December 19, 1931, the Bank was closed by the Oregon State Superintendent of Banks, who took over all of its assets and immediately thereafter sent notice of 100% assessment on stock ownership to all of the Bank's stockholders. This assessment was later held void by the Supreme Court of Oregon.

In January, 1932, the Bank's officers undertook a reorganization and procured an agreement from most of the depositors to accept 30% of their deposits in preferred stock of the Securities Company, the balance of their deposits to be assumed by a new bank to be organized. In April, 1932, the Hibernia Bank, hereinafter called the new bank, was incorporated and the Securities Company subscribed and paid for all its capital stock except qualifying shares. The capital stock of the new bank was the same as that of the old bank, $300,000. A loan of $500,000 was procured from the Reconstruction Finance Corporation by the Securities Company, and that sum used by it to pay the new bank for stock. The Securities Company deposited a large part of its assets with the Reconstruction Finance Corporation as security for the loan. The Securities Company turned over to the new bank $1,600,000 par value of its preferred stock to meet the partial payment on depositors' accounts, the authorized stock of the Securities Company having been in-

creased to provide for this payment. At the end of the year 1932, the Reconstruction Finance Corporation loan and the preferred stock issue were outstanding obligations of the Securities Company.

Practically all of the assets of the Securities Company, with the exception of the stock of the new bank, which it had paid for with borrowed cash, were taken over from the old bank as "rejected" or "not acceptable" assets, carried on the books of the Securities Company at the value first assigned to them when acquired by the old bank.

The new bank experienced difficulties in meeting demands made upon it for cash by depositors and before the end of the year its officers decided to close and liquidate it. On December 17, 1932, following negotiations, the new bank received an offer from the First National Bank of Portland, Oregon, to take over the new bank's deposit obligations at stated terms. The directors of the new bank held a special meeting December 30, 1932, and, having previously decided not to attempt to open the new bank in 1933, voted to accept the offer of the First National Bank, and subsequently confirmed and ratified this acceptance in meetings held in January, 1933. The depositor's accounts in the new bank were transferred to the First National Bank, as of January 2, 1933, as well as certain selected assets, and the new bank gave two notes, in the sums of $920,000 and $498,756.94, to cover the excess of obligations assumed over assets assigned, secured by the remaining assets.

The new bank and the Securities Company continued in existence throughout the year 1933, and the new bank reduced its notes held by the First National from $1,418,756.94 to $218,000, while the Securities Company reduced its indebtedness to the Reconstruction Finance Corporation.

While not found by the Board, the following facts also appear in the record:

The balance sheet of the Hibernia Securities Company, as of December 31, 1933, reflected assets, pledged and unpledged, of a book value of $2,484,512.97, with an estimated liquidating value of $852,564.12. The same balance sheet listed liabilities of $467,958.90, leaving an estimated balance on liquidation of $384,605.22. Deducting this last sum from $1,379,734, the total

outstanding preferred stock, would leave $995,128.78 of preferred stock to be retired before the common stock would realize anything at all.

The balance sheet of the new bank as of December 31, 1933, revealed assets of book value of $742,939.51, and liabilities of $223,753, a difference of $519,186.51, while the difference between the estimated liquidating value of the same assets, $527,224, and the liabilities would leave $303,471. This last figure would permit an estimated liquidation value of $101 per share on the outstanding stock of the new bank, returning the sum of $295,930 to the Securities Company.

This is a petition for review of decisions of the Board of Tax Appeals holding that there was a deficiency in the income tax of each petitioner for the year 1933. The petitioners contend that common stock of the Hibernia Securities Company, held by them, became worthless during the year 1933, and that, therefore, they were entitled to deduct the cost price of the shares of stock of Hibernia Commercial & Savings Bank, acquired in 1928 and prior thereto, represented by the common stock of the Securities Company, resulting from alleged reorganizations.

As we view it, the sole question presented is whether the Common Stock of Hibernia Securities Company became worthless during the calendar year 1933 resulting in an actual loss to petitioners, capable of ascertainment in that year.

By Section 23 of the Revenue Act of 1932, 47 Stat. 169, 179, 180, 26 U.S.C.A. § 23, deductions are allowed individuals for losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business or if incurred in any transaction entered into for profit, though not connected with the trade or business; and to corporations for losses sustained during the taxable year and not compensated for by insurance or otherwise.

Article 174 of Treasury Regulations 77, relating to shrinkage in value of stocks, reads as follows: "A person possessing stock of a corporation can not deduct from gross income any amount claimed as a loss merely on account of shrinkage in

value of such stock, through fluctuation of the market or otherwise. The loss allowable in such cases is that actually suffered when the stock is disposed of. If stock of a corporation becomes worthless, its cost or other basis as determined and adjusted under section 113 [of the Revenue Act of 1932, 47 Stat. 169, 198] is deductible by the owner in the taxable year in which the stock became worthless, provided a satisfactory showing is made of worthlessness. * * *"

▇▇ The right to claim a deduction is a statutory privilege (Squier et al. v. Commissioner, 2 Cir., 68 F.2d 25, 27; McGinley Corp. v. Commissioner, 5 Cir., 82 F.2d 56; Paul and Mertens, Law of Income Taxation, vol. 3, p. 257, § 26.25), and the burden of proving losses within the statute rests upon the taxpayer (Paul & Mertens, § 26.28). Proof of loss upon stock may be made on two events, (1) when the stock is disposed of, or (2) when it actually becomes worthless. Art. 174, Tr. Reg. 77. There was here no sale, and the stock was not disposed of. "Generally speaking, the income tax law is concerned only with realized losses, as with realized gains." Lucas v. American Code Co., Inc., 280 U.S. 445, 449, 50 S.Ct. 202, 203, 74 L.Ed. 538, 67 A.L.R. 1010. It was incumbent upon petitioners to prove, therefore, that the stock in question became worthless within the taxable year. Rosing v. Corwin, 2 Cir., 88 F.2d 415, 416; Royal Packing Co. v. Commissioner, 9 Cir., 22 F.2d 536, 538. "Partial losses are not allowable as deductions from gross income so long as the stock has a value and has not been disposed of." Dresser et al. v. United States, Ct.Cl., 55 F.2d 499, 512. Generally, also, the taxpayer must prove an identifiable event which makes the loss deductible; this may be a single event or a series; and occurs usually when the property in question is sold or disposed of or its value otherwise extinguished. Coalinga-Mohawk Oil Co. v. Commissioner, 9 Cir., 64 F.2d 262, 263; Rosing v. Corwin, supra.

The Supreme Court has said: "The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal, test." Lucas v. American Code Co., 280 U.S. 445, 449, 50 S.Ct. 202, 203, 74 L.Ed. 538, 67 A.L.R. 1010. See also Monmouth Plumbing Supply Co., Inc., v. United States, D.C.

Fla., 4 F.Supp. 349, 350; Brown v. Commissioner, 6 Cir., 94 F.2d 101, 103.

Rhodes v. Commissioner, 6 Cir., 100 F. 2d 966, 969, contains a good summary of the rule on this subject:

"Two basic facts must always be present to authorize the taxpayer to deduct a loss; first, the amount thereof, second, an identifiable event clearly showing the year it occurred. Generally speaking, the income tax law is concerned only with realized gains and ascertained losses. There is an exception to this rule, however, in the case of losses which are so reasonably certain in fact and ascertainable in amount as to justify their deduction and in certain circumstances even before they are absolutely sustained. [Citing Lucas v. American Code Co.]

▇▇ "The question whether property becomes worthless during a particular year is one of fact. If substantial evidence is presented upon which the Board of Tax Appeals makes a factual determination, the only question of law presented in the review is whether the Board's findings are supported by substantial evidence. [Case cited.]"

▇▇ The Commissioner of Internal Revenue disallowed the claimed deductions in question. "His ruling has the support of a presumption of correctness, and the petitioner has the burden of proving it to be wrong." Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212. The Board of Tax Appeals sustained the Commissioner. "The only question of law presented in review is whether the Board's findings are supported by substantial evidence." Brown v. Commissioner, 6 Cir., 94 F.2d 101, 103. See also Royal Packing Co. v. Lucas, 9 Cir., 38 F.2d 180, 182. This court is without power, on review of proceedings of the Board, to make any findings of fact. " 'The Board of Tax Appeals is not a court. It is an executive or administrative board, upon the decision of which the parties are given an opportunity to base a petition for review to the courts after the administrative inquiry of the Board has been had and decided.' Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 725, 49 S.Ct. 499, 502, 73 L.Ed. 918. The function of the court is to decide whether the correct rule of law was applied to the facts found; and whether there was substantial evidence before the Board to sup-

port the findings made. [Cases cited.] Unless the finding of the Board involves a mixed question of law and fact, the court may not properly substitute its own judgment for that of the Board." Helvering v. Rankin, 295 U.S. 123, 131, 55 S.Ct. 732, 736, 79 L.Ed. 1343. See also Helvering v. Nat. Grocery Co., 304 U.S. 282, 294, 58 S.Ct. 932, 938, 82 L.Ed. 1346, where the Supreme Court said: "To draw inferences, to weigh the evidence and to declare the result was the function of the Board." The findings of the Board will not be disturbed if there is any substantial evidence in support thereof.

 It is extremely uncertain, it is true, from the evidence produced by the taxpayer and, perhaps, from the findings of the Board, whether anything at all would ever be realized from the Securities Company stock. We are not, however, positive that it became absolutely worthless in 1933, or that it had a less value in 1933 than in 1932, or, for that matter, a greater value, or that 1934 was not the year, or, even, 1935. No showing has been made sufficient to justify us in ignoring the presumption of correctness in the Commissioner's ruling, or to hold there was an entire lack of substantial evidence to support the findings of the Board. Moreover, if there is opportunity for opposing inferences, the judgment of the Board controls. Elmhurst Cemetery Co. v. Commissioner, 300 U.S. 37, 40, 57 S.Ct. 324, 81 L.Ed. 491; Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 490, 57 S.Ct. 569, 81 L.Ed. 755.

 While it is also quite true "that a loss may become complete enough for deduction without the taxpayer's establishing that there is no possibility of an eventual recoupment.", and that "The taxing act does not require the taxpayer to be an incorrigible optimist." (United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 402, 403, 47 S.Ct. 598, 600, 71 L.Ed. 1120), nevertheless, cessation of business is not conclusive, though, of course, not every possibility of value will be considered. Rosing v. Corwin, supra. A real loss is sustained only when all chances or possibilities of collection have been effectively destroyed. Olds & Whipple, v. Commissioner, 2 Cir., 75 F.2d 272, 275. See also Burnet, etc. v. Imperial Elevator Co., 8 Cir., 66 F.2d 643, 644, 645.

The decision of the Board of Tax Appeals is affirmed.