**Robert W. DELK; Dorothy A. Delk; Michael W. Delk; Mary M. Delk, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent– Appellee.**

No. 95–70920.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 4, 1997.

Decided May 7, 1997.

James C. Griggs, Saalfeld, Griggs, Gorsuch, Alexander & Emerick, Salem, Oregon, for petitioners-appellants.

Gary R. Allen, Attorney, Tax Division, United States Department of Justice, Washington, D.C., for respondent-appellee.

Before: FLETCHER and TASHIMA, Circuit Judges, and SCHWARZER,* Senior District Judge.

## OPINION

SCHWARZER, Senior District Judge.

Section 165(g)(1) of the Internal Revenue Code provides that when a security held as a capital asset becomes worthless, the resulting loss may be treated as a capital loss. The question before us is whether shareholders who, after their shares in a bankrupt corporation are canceled, contribute capital to the corporation's reorganization and receive new shares in the reorganized corporation as a consequence of such contribution may recognize loss.

* Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

## FACTS AND PROCEDURAL BACKGROUND [1]

Robert and Michael Delk (the "Delks"), along with other family members and the Employee Pension Trust Fund (the "Fund"), were shareholders in Valley Oil Company, a close corporation founded by the Delks' father. Valley Oil was profitable until 1987, when a group of companies to which it had lent money defaulted on their obligations. As a result, Valley Oil was unable to pay its own creditors. In 1988, Valley Oil's creditors filed an involuntary Chapter 7 (liquidation) bankruptcy petition; later that year, the bankruptcy court converted the proceeding to a Chapter 11 reorganization, leaving Valley Oil as the debtor in possession. At the time the bankruptcy petition was filed, Valley Oil's common stock was held as follows:

| | |
|---|---|
| Robert W. Delk (petitioner) | 29.40% |
| Michael W. Delk (petitioner) | 13.72% |
| Benjamin T. Delk | 2.00% |
| David G. Jewett | 13.72% |
| Edward J. Baldwin | 13.72% |
| Employee Pension Trust Fund | 27.44% |

The bankruptcy court determined that Valley Oil's liabilities exceeded its assets by over $3 million. The company received numerous offers for the purchase of its assets, none of which was acceptable to the creditors, but no offers for the purchase of its shares. Valley Oil proposed several plans of reorganization. In July 1989, the bankruptcy court confirmed the Fifth Modified Plan of Reorganization, pursuant to which the company canceled all its old common shares and issued new common shares to the Delks (and to the Fund) in exchange for consideration worth $267,844. The new shares were distributed as follows:

| | |
|---|---|
| Robert W. Delk | 42.55% |
| Michael W. Delk | 42.55% |
| Employee Pension Trust Fund | 14.90% |

During the reorganization proceedings and following approval of the plan of reorganization, Valley Oil maintained substantially the same business as before, used the same physical plant, and employed the same personnel.

1. The parties stipulated to the facts.

On their 1989 tax returns, the Delks claimed deductions under 26 U.S.C. § 165(g) for their canceled Valley Oil shares.[2] The Commissioner disallowed the deductions and assessed deficiencies and penalties.

The Delks petitioned the Tax Court for a redetermination of their tax obligations. The court held that, although the securities had no liquidating value at the time of their cancellation, they retained "potential future value" and therefore were not worthless for purposes of § 165(g). The Delks appeal from the Tax Court's decision. We have jurisdiction under 26 U.S.C. § 7482 and reverse.

## STANDARD OF REVIEW

■ Whether securities became worthless during a given taxable year is a question of fact to be determined by the Tax Court. *Boehm v. Commissioner*, 326 U.S. 287, 293, 66 S.Ct. 120, 124, 90 L.Ed. 78 (1945). As we recently held, "[w]e review decisions of the Tax Court on the same basis as we would any decision rendered by a district court in a civil bench trial.... [Thus, the] Tax Court's factual findings ... are reviewed for clear error." *Condor Int'l, Inc. v. Commissioner*, 78 F.3d 1355, 1358 (9th Cir.1996).

## DISCUSSION

■ Securities may not be considered worthless, even when they have no liquidating value, if there is a reasonable hope and expectation that they will become valuable in the future. *Lawson v. Commissioner*, 42 B.T.A. 1103, 1108, 1940 WL 144 (1940). But, "such hope and expectation may be foreclosed by the happening of certain events such as the bankruptcy, cessation from doing business, or liquidation of the corporation, or the

appointment of a receiver...." *Morton v. Commissioner*, 38 B.T.A. 1270, 1278, 1938 WL 165 (1938), *aff'd*, 112 F.2d 320 (7th Cir. 1940). To establish worthlessness, the taxpayer "must show a relevant identifiable event ... which clearly evidences destruction of both the potential and liquidating values of the stock." *Austin Co. v. Commissioner*, 71 T.C. 955, 970, 1979 WL 3593 (1979). The burden of establishing worthlessness is on the taxpayer. *Figgie Int'l Inc. v. Commissioner*, 807 F.2d 59, 62 (6th Cir.1986).

■ In this case, the Tax Court accepted the Commissioner's argument that the Delks' status as owners of the old shares entitled them to the new shares and that the new shares simply were a continuation of their investment in the old shares, albeit augmented by the contribution of additional funds. Thus, the Tax Court concluded, the potential value of Valley Oil to its shareholders attached to the old shares, and such shares therefore were not made worthless by their mere cancellation.

We disagree. It is elementary that upon cancellation of a corporation's shares, a shareholder no longer has any right to participate in the profits of the corporation.[3] Thus, the old shares could only have had value to the Delks if they had entitled them to receive new shares. The Delks received shares in the new corporation solely as consideration for their contribution of $267,844, pursuant to a plan of reorganization approved by the corporation's creditors and confirmed by the bankruptcy court. The other holders of the old shares (Benjamin Delk, David Jewett and Edward Baldwin), who were not part of the approved reorganization plan and made no contribution of capital, received no shares in the reorganized firm.[4]

2. Section 165(g)(1) provides: "If any security which is a capital asset becomes worthless during the taxable year, the loss resulting therefrom shall, for purposes of this subtitle, be treated as a loss from the sale or exchange, on the last day of the taxable year, of a capital asset." 26 U.S.C. § 165(g)(1).

3. If that were not true, none of the holders of the old shares would have been entitled to a deduction upon their cancellation.

4. The Tax Court concluded that "the cancellation of the old stock and the issuance of the new stock comprised an unessential element of the plan of reorganization. If all of the shareholders of Valley Oil had been willing to remain as shareholders and to contribute their proportionate share of the $267,000 required under the plan, the cancellation of the old stock would have been unnecessary." We agree, but it is equally true that if pigs had wings, they could fly. The fact is that the other shareholders did not (for reasons not disclosed by the record) contribute their propor-

*Brooks v. United States,* 32 F.Supp. 158 (M.D.Pa.1940), is closely on point. The *Brooks* court held that an identifiable event evidencing worthlessness occurred when, in carrying out a plan of reorganization, the corporation's old common shares were canceled and new shares were then issued both to former shareholders and to outsiders:

> That old common stock conferred no benefit or valuable privilege with respect to the reorganization of the bank, since the new common stock was offered to old shareholders on the same basis it was offered to outsiders, and the retention of the old shares would give no interest in the reorganized corporation.

*Id.* at 164.

The Tax Court's attempt to distinguish this decision on the ground that it was based on a "clear separation between the cancellation of the old stock and the sale of the new" is not persuasive. In *Brooks,* new shares were purchased by outsiders as well as by taxpayers in the reorganization. By analogy, the Delks had to satisfy the creditors that their offer was superior to the offers submitted by potential purchasers of Valley Oil's assets who were unaffiliated with the Delks. Thus, like the taxpayers in *Brooks,* the Delks did not acquire their new shares by reason of having held old shares.[5]

Similarly, in *DeFord v. Commissioner,* 19 B.T.A. 339, 1930 WL 536 (1930), the Board of Tax Appeals found that the equity of a taxpayer's common shares was wholly extinguished in December 1922, when the corporation initiated a plan of reorganization requiring holders of common shares to pay an assessment of $20 to retain an interest in the reorganized company. Persons not then shareholders could also subscribe to the new shares on paying the $20 assessment. The Board concluded that "at the end of December, 1922, ... ownership of the par value

common stock of the company conferred no benefit or valuable privilege with respect to the reorganization of the [corporation]." *Id.* at 343. *DeFord* does not support the Tax Court's holding that a "clear separation" is required between cancellation of old shares and sale of the new.

Furthermore, in *Stearns v. Kavanagh,* 29 A.F.T.R. 1487 (E.D.Mich.1941), the district court permitted a taxpayer to recognize a § 165(g)(1) loss where his common shares in a close corporation had been canceled pursuant to a reorganization plan that also gave him a majority interest in the reorganized corporation in exchange for his transferring to the new corporation all the old corporation's indebtedness held by him. The court held "[t]he outright cancellation of the common stock of [the old corporation] without granting any rights or privileges to the holders thereof provided a sufficiently completed or closed transaction to permit the holders to claim a deduction for that year." *Id.* at 1488; *see also A.R. Jones Oil & Operating Co. v. Commissioner,* 114 F.2d 642, 645 (10th Cir. 1940) (holding that shares became worthless at the point during negotiation of plan of reorganization when creditors determined to accord to them no value); *Lawson v. Commissioner,* 42 B.T.A. 1103, 1108, 1940 WL 144 (1940) (same).

In contrast, in *Coleman v. Commissioner,* 31 B.T.A. 319, 1934 WL 70 (1934), *aff'd,* 81 F.2d 455 (10th Cir.1936), the Board found that no loss had been sustained where a new corporation was organized to take over the business of the old corporation, and shareholders of the latter who chose not to subscribe to new common shares were entitled to warrants permitting them to purchase the new shares at a specified price. This provision for exchange of old shares for new shares or for warrants led the Board to conclude that the old shares had some value. *Id.* at 325; *see also Jones v. Commissioner,*

---

tionate share, making it necessary to cancel the old shares.

**5.** The Tax Court's other basis for finding that the Delks' shares had potential value-that they were active participants in developing the plan of reorganization-is equally off the mark considering that Valley Oil was the debtor in possession and a closely-held corporation. That the Delks may

have had a part in formulating the plan of reorganization is not a factor in determining whether the old shares had potential value. *See Stearns v. Kavanagh,* 29 A.F.T.R. 1487, 1488, 41–2 U.S.T.C. ¶ 9750, ¶ 9751 (E.D.Mich.1941) (holding majority shareholder was entitled to take § 165(g) deduction where he planned reorganization in his capacity as creditor).

103 F.2d 681 (9th Cir.1939) (holding no loss occurred merely because common shares lost their equity); *United Gas Improvement Co. v. Commissioner*, 47 B.T.A. 715 (1942), *aff'd*, 142 F.2d 216 (3d Cir.1944) (no loss where, in the course of reorganization, principal shareholder exchanged old common and preferred shares for new common shares).

The reorganization plan submitted by the Delks, which the creditors approved over offers from other parties to purchase Valley Oil's assets, entitled them to participate in the new corporation only after investing additional capital. Cancellation of the old shares, eliminating shareholders who would not contribute new funds, was a necessary part of that plan.[6] Thus, the cancellation was an "identifiable event[ ] which clearly evidence[d] the destruction of the value of [the original] stock investment." *A.R. Jones Oil & Operating Co.*, 114 F.2d at 645. While cancellation alone is not determinative of loss, *see United Gas Improvement Co.*, 47 B.T.A. at 724, where after "a series of transactions culminating in the decision of the creditors who had control under the provisions of the reorganization act not to accord any value to the common stock, these occurrences constituted an identifiable [loss] event evidenced by closed transactions." *A.R. Jones Oil & Operating Co.*, 114 F.2d at 646; *see Jones*, 103 F.2d at 684 (stating that a loss event "may be a single event or a series").

We therefore hold that the Tax Court's decision was clearly erroneous and that the Delks met their burden of proving that the cancellation of their old shares was an identifiable event clearly evidencing destruction of their potential and liquidating values.

The decision is REVERSED.

---

6. The government misses the point of the requisite new investment when it argues in its brief that "taxpayers at all times had all the benefits and burdens of owning 'shares of stock' in Valley Oil, a company that clearly continued as of the end of 1989 to have the potential for future profitability. Taxpayers continuously had (and never lost) the right to share in Valley Oil's profits, to vote on matters affecting its business, and to share ratably in its assets upon liquidation of the company." (Appellee's Br. at 15.) They had those rights, however, not by reason of having owned old shares but by having submitted the reorganization plan approved by the creditors and by then having contributed the new capital required by that plan. Had their plan not been chosen, they would have had no more interest in the new corporation than the old shareholders who did not participate.