In re Terri L. STEFFEN, Debtor.

No. 01–09988–8P1.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Feb. 4, 2004.

Harley E. Riedel, II, Stichter, Riedel, Blain & Prosser, Tampa, FL, for Debtor.

Theresa M. Boatner, Office of the United States Trustee, Tampa, FL, for U.S. Trustee.

### ORDER ON MOTION FOR RECONSIDERATION OF FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION DATED APRIL 18, 2003

ALEXANDER PASKAY, Bankruptcy Judge.

The matter under consideration in this yet-to-be confirmed Chapter 11 case of Terri Steffen (Debtor) is "Motion for Re-consideration of Findings of Fact, Conclusions of Law and Memorandum Opinion dated April 18, 2003," filed by the Debtor on October 6, 2003. This Court entered its Findings and Conclusions on April 18, 2003, in this contested matter, which involves the Debtor's objection to the amended proof of claim, Claim No. 6, of the United States of America, Internal Revenue Service (IRS).

A brief summary of the relevant procedural as well as factual history is as follows. Claim No. 6 was filed by the IRS in the amount of $5,856,721.11 and is based on a deficiency determined by the IRS after an examination of the joint tax returns of the Debtor and her non-Debtor spouse, Paul A. Bilzerian (Bilzerian) for the tax years of 1985, 1986, 1991, 1992, and 1993.

In the Objection, the Debtor contended that she was not indebted to the IRS, or at least not in the amount claimed by the IRS. In challenging the claim, the Debtor outlined several basis: First, she contended that the disallowance of the deduction of the loss of value of the Debtor's interest in the common stock of Bicoastal Corporation, Inc. (Bicoastal), which was owned jointly by the Debtor and Bilzerian was in error. Second, she contended that the determination by the IRS that she understated her capital gain attributable to the disposition of South Bay Fashion Center (South Bay) during 1992 was in error. Lastly, the Debtor specified eleven additional objections to the claim.

Prior to the commencement of the trial, the parties agreed that the issues would be bifurcated and the following issues were initially tried:

1. What tax year did the Bicoastal stock become worthless;

2. What was the Debtor's adjusted basis in the Bicoastal stock; and

3. What was the Debtor's capital gain from the 1992 foreclosure of the Southbay Fashion Center.

Inasmuch as the Debtor only seeks reconsideration of the first two issues, this Court will not visit, summarize or mention its conclusions as to the last issue. In its Findings and Conclusions, this Court concluded that based on the facts established at the trial and the applicable legal principles, the Debtor failed to establish, by the requisite degree of proof, the two-prong test sufficient to warrant the finding that the value of the Bicoastal stock was a total loss and was incurred during the tax year of 1989 as claimed by the Debtor and instead held that the applicable year was 1993. Considering the appropriate basis for the cost of acquisition of the Bicoastal common stock by the Debtor and Bilzerian, this Court determined that the initial cost basis was in the amount of $23,366,705, which was further adjusted downwards by $18.6 million for the following deductions: $7.4 million from Forgason and his related entities and Roth; $9.5 million from Oxley; and $1.6 million from Bicoastal Holding Company. After recalculating the adjusted basis, this Court concluded that the Debtor's adjusted basis for the acquisition of the Bicoastal common stock was $4,766,705.

*First Issue: What year did the Bicoastal stock become worthless?*

■ Considering initially this Court's determination that the Debtor's interest in the common stock of Bicoastal did not become worthless in the year 1989 but became worthless in the year 1993, it is the contention of the Debtor that this Court erred because the Court: (1) improperly relied on the presumption of correctness of the claim of the IRS; (2) failed to determine that the common stock in Bicoastal had any value in '89, '90, '91, and '92; (3)

improperly relied on the "Semi–Tech lawsuit," which was commenced in 1990 as opposed to 1989 and improperly based its findings on this lawsuit; and (4) failed to give the proper deference to the Debtor's determination of the worthlessness of the stock.

In support of the first contention, that is the presumption of correctness, the Debtor cites several cases for the proposition that although the commissioner's assessment of a deficiency is "presumptively correct," the commissioner's assessment is not substantive evidence in a case. *Gillette's Estate v. Commissioner*, 182 F.2d 1010 (9th Cir. 1950); *Woodward v. United States*, 106 F.Supp. 14 (N.D.Iowa 1952), *aff'd*, 208 F.2d 893 (8th Cir.1953). In *Woodward*, the court held that: "[i]f and when the taxpayer introduces any evidence that the Commissioner's determination is in error, this presumption is no longer of probative force and effect, and the issue then will be decided upon the preponderance of the evidence adduced at the trial of the cause." *Woodward*, 106 F.Supp. at 31. In its written response, the IRS concedes that the Debtor "correctly points out that the presumption is not evidence and that it disappears when the taxpayer adduces contrary evidence." *Opposition* by United States (Doc. No. 217).

According to the Debtor, the only disputed issue with respect to the Debtor's deduction was the year of worthlessness and that the Debtor only had to prove that a prudent businessman would have concluded that at the end of 1989, the Bicoastal common stock did not have value, *citing Steadman v. Commissioner*, 50 T.C. 369, 1968 WL 1558 (1968), *aff'd*, 424 F.2d 1 (6th Cir.), *cert. denied*, 400 U.S. 869, 91 S.Ct. 103, 27 L.Ed.2d 109 (1970); *Ainsley Corp. v. Commissioner*, 332 F.2d 555 (9th Cir.1964). For the reasons set forth below, this Court is satisfied that whether or

not the presumption lost its probative force, the Debtor nevertheless failed to establish by the preponderance of the evidence that the deduction in 1989 was proper.

The second and third contentions by the Debtor that this Court erred in its determination that the Bicoastal stock became worthless in the year 1993 is based upon her assertion that the IRS failed to prove that Bicoastal had value for each year prior to 1993 and that this Court relied upon the Semi–Tech lawsuit initiated in the year 1990 to determine value for the year 1989. This Court will consider both of these contentions together inasmuch as the facts and analysis are intertwined.

Upon reconsideration, this Court is satisfied that additional findings of value for the Bicoastal stock for each preceding year or that the Debtor failed to prove that the stock was worthless for the years preceding 1993, are necessary and are as follows. The Debtor incorrectly asserts in its Motion for Reconsideration that this Court solely relied upon the Semi–Tech litigation to determine that the Bicoastal stock had no value in the year 1989. This Court is satisfied that this statement is without merit inasmuch as this Court determined that the "identifiable events" listed by the Debtor for the year 1989 did not render the Bicoastal stock totally without potential value. This Court affirms its holding that the "identifiable events" were not "closed and complete transactions." Treas. Reg. § 1.165–1(b).

It is without dispute that Bicoastal entered into a royalty agreement with Semi–Tech in early 1989 and the lawsuit against Semi–Tech was not filed until late 1990. Bicoastal, in its Notes to Consolidated Financial Statements (Notes) filed with the SEC for Bicoastal and its subsidiaries, discussed the royalty agreement with Semi–Tech and described the same as follows:

In May 1989, Singer and Semi–Tech entered into an agreement in which Singer sold all of its rights throughout the world in the trademarks, service marks and trade names "SINGER" to Semi–Tech in exchange for certain contingent payments based on future sales of certain products by Semi–Tech and its affiliates.

(Db. Ex. 20, pg. 8 of Notes). It should be noted that this audit report, done by KPMG Peat Marwick (KPMG), was dated April 12, 1990 in a cover letter, which enclosed the Notes. The Debtor states that this is the only reference to the Semi–Tech agreement in which a "potential shareholder" could have relied on to find that there was value in the stock in the year 1989. However, a further reading of these Notes reveals the following passage:

The Company is not able to predict how and when the Chapter 11 proceeding will be concluded nor the expense associated therewith, which could be substantial. Management's objectives in the Chapter 11 proceedings are to effectuate a reorganization which *will result in the highest possible recoveries for all creditors and shareholders* consistent with the Company's ability to pay and continuation of its business.

(Emphasis supplied). (Db. Ex. 20, pg. 21 of Notes). This Court is satisfied that the Debtor failed to prove with the requisite degree of proof that a prudent business man would have rendered the Bicoastal stock worthless in the year 1989 regardless of the Semi–Tech litigation.

Affirming its decision that the stock did not become worthless in the year 1989, this Court now turns to the year 1990 for the Debtor's request for reconsideration that the Bicoastal stock became worthless in any of the other years prior to 1993. In 1990, it is without dispute that the Semi–Tech lawsuit was filed, therefore, until it

was resolved, which was in 1993, this Court is satisfied that that event was the identifiable event which rendered the potential value of the Bicoastal stock as worthless.

■ Notwithstanding, the Debtor asserts that the common stock of Bicoastal was cancelled in the year 1992 and thus, this event rendered the stock worthless. Although at first blush this assertion appears to have merit, this Court is satisfied that the facts in this case do not warrant such a finding.

The Order (A) Confirming Amended and Restated Plan of Reorganization of Bicoastal Corporation Pursuant to 11 U.S.C. § 1129 and (b) Granting motion to Compromise with the United States and Others (Bicoastal Confirmation Order) was entered on September 14, 1992, in the Chapter 11 case of Bicoastal, bearing case number 89–8191–BKC–8P1. (Db.Ex. 17). In the Bicoastal Confirmation Order, section E entitled "Cancellation of Stock, Discharge, and Post–Confirmation Payments and Agreements," ¶ 24 includes a provision that the "Common Stock" is deemed canceled. However, the Modification to the Amended and Restated Plan of Reorganization of Bicoastal Corporation (Modification) created a stock trust and provided that the stock trustee hold the common stock of the reorganized debtor in trust for the benefit of BPLP–1 or its designee subject to the condition that BPLP–1 would receive a distribution if the assets of Bicoastal were sufficient to pay all others. *See* Modification, ¶ 10 and 13—7.13.1, 7.13.2 7.13.6. (IRS Ex. 57).

Although the Debtor does not cite to any specific cases for the proposition that cancellation of stock is an identifiable event that renders the stock worthless, especially in a bankruptcy context, there are nevertheless several cases that support this proposition. In the case of *Delk v. C.I.R.,*

113 F.3d 984 (9th Cir.1997), the Ninth Circuit found in favor of the taxpayer and determined that the stock became worthless upon cancellation and reversed the tax court's decision. In support of its decision, the Ninth Circuit cited *Brooks v. United States,* 32 F.Supp. 158 (M.D.Pa.1940); *Deford v. Commissioner,* 19 B.T.A. 339, 1930 WL 536 (1930); and *Stearns v. Kavanagh,* 29 A.F.T.R. 1487 (E.D.Mich.1941). *Delk v. C.I.R.,* 113 F.3d at 987. In each of these cases, as well as in *Delk,* the common shares of the debtor-company were canceled and new shares were issued pursuant to a plan of reorganization where the original shareholders additionally contributed to the plan or where outsiders were also offered new shares notwithstanding that they did not have the original shares that were cancelled.

Also discussed in *Delk* are cases that hold the contrary position that is that notwithstanding the cancellation of the common stock, the stock did not become worthless in that year. *See Coleman v. Commissioner,* 31 B.T.A. 319, 1934 WL 70 (1934), *aff'd,* 81 F.2d 455 (10th Cir.1936), *Jones v. Commissioner,* 103 F.2d 681 (9th Cir.1939); *United Gas Improvement Co. v. Commissioner,* 47 B.T.A. 715 (1942), *aff'd,* 142 F.2d 216 (3d Cir.1944).

In the case at hand, this Court is satisfied that the facts are distinguishable from the facts in *Delk* and rejects *Delk* and the cases cited therein in support of that position. Although the stock was cancelled in the Bicoastal bankruptcy case, it was placed in trust for the shareholders. As the common shareholders had the potential for distribution under the Amended Plan, as confirmed by this Court, it cannot be said that the common stock of Bicoastal was rendered valueless simply by virtue of its cancellation, especially in light of the fact that there was a creation of a stock trust. At a minimum, the facts in Bicoas-

tal were complicated and not a straight mom and pop organization that had the common stock canceled upon effectuation of a plan.

The Debtor, in its Motion for Reconsideration, devoted a substantial portion of its pleadings to assert that this Court erred by basing its decision on the possible recovery of the Semi–Tech lawsuit that was not "contemplated" by Bicoastal in the year 1989 and thus, could not be used as foresight. In support of this proposition, the Debtor cites a number of cases: *Halliburton Company v. C.I.R.*, 946 F.2d 395 (5th Cir.1991); *Rainbow Inn, Inc., v. C.I.R.*, 433 F.2d 640 (3rd Cir.1970); *Textron, Inc. v. U.S.*, 561 F.2d 1023 (1st Cir. 1977); *Estate of Scofield v. C.I.R.*, 266 F.2d 154 (6th Cir.1959); *U.S. v. S.S. White Dental Manufacturing Co.*, 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120 (1927). In its written submission, the Debtor asserts that "the courts are unanimous in their view that 'hindsight plays no role in the totality-of-the-circumstances analysis' with respect to the determination of the date of worthlessness of a capital asset." *Motion for Reconsideration*, p. 9.

As noted above, this Court bases its determination that the Bicoastal stock did not become worthless in the year 1989 on other grounds. Notwithstanding, it is important to note that the Debtor and Bilzerian *amended* their 1989 tax return to claim the worthless stock loss on *June 20, 1991* (emphasis supplied). (Db.Ex. 30). It is woefully inappropriate for the Debtor and Bilzerian to assert that this Court cannot inquire into events following the year 1989 when the taxpayers themselves had the benefit of 20/20 hindsight to amend their tax return for the year 1989.

In the case of *Jeppsen v. Commissioner*, 128 F.3d 1410 (10th Cir.1997), the taxpayer challenged the denial of an income tax deduction for loss contending that the tax court erred in considering events that transpired after December 31, 1987, the year that he sought the loss deduction, in determining whether he had a reasonable prospect for recovery of a loss by the end of that year. In *Jeppsen*, the Tenth Circuit analyzed the case law involving the very issue raised by the Debtor in this case: whether a court may consider events that transpired after the end of a tax year in order to determine whether, as of the end of that tax year, a taxpayer enjoyed a reasonable prospect of recovery, or in this case, whether the stock had any potential value.

In its analysis, the Tenth Circuit noted that *S.S. White Dental Mfg. Co.* did not address the issue of whether the IRS or a court may consider a taxpayer's ultimate recovery as one fact in its assessment of the reasonableness of the taxpayer's *ab initio* prospect of recovery. It when on to thoroughly analyze *Ramsay Scarlett & Co. v. Commissioner*, 61 T.C. 795, 1974 WL 2742 (1974), *aff'd*, 521 F.2d 786 (4th Cir. 1975), wherein the Fourth Circuit stated *"The standard is to be applied by foresight, and hence, we do not look at facts whose existence and production for use in later proceedings was not reasonable foreseeable as of the close of the particular year." Jeppsen*, 128 F.3d at 1415, *quoting Ramsay Scarlett*, 61 T.C. at 811–12, 1974 WL 2742, emphasis in original, also citing *Rainbow Inn, Inc., supra*, as an *accord*. And in *Jeppsen*, the Tenth Circuit also cited to *Dawn v. Commissioner*, 675 F.2d 1077 (9th Cir.1982). In *Dawn*, the Ninth Circuit did take into consideration a lawsuit filed after the close of the tax year in which the loss was claimed, determining that it was reasonably foreseeable during that year that a lawsuit would later be filed.

In *Jeppsen*, the Tenth Circuit agreed with the legal principles as outlined in

*Ramsay Scarlett.* The court when on to hold that neither the IRS nor the tax court could consider facts not reasonably foreseeable as of the close of the pertinent tax year. In applying these principles, the Tenth Circuit nevertheless rejected Jeppsen's claim that the tax court improperly relied upon the filing of the lawsuit by Jeppsen and ultimate recovery, noting that the tax court expressly stated that its finding were not influenced by its receipt of such evidence. *Jeppsen,* 128 F.3d at 1416. Moreover, the Tenth Circuit, upon review of the tax court's findings noted that Jeppsen filed suit in March of 1988, several months before he filed his 1987 tax return. *Jeppsen,* 128 F.3d at 1419.

In applying the *Jeppsen* case, the district court in the Middle District of Florida recently held that the taxpayers had failed to sustain their burden that they were entitled to a worthless stock deduction for a given year. In the case of *Wagner v. United States of America,* 2003 WL 691029 (M.D.Fla.2003), the taxpayers/shareholders sought to deduct the loss they sustained when their corporation dissolved in the year 1994 pursuant to 26 U.S.C. § 165(a) and (g). In opposition, the government contended that the taxpayers had not satisfied their burden and the district court agreed.

In *Wagner,* the taxpayers were shareholders of Resource Technology Associates (RTA), a corporation created to invest in new technology for safe and efficient disposal of tires. In 1989, RTA entered into an agreement with another company, EDS, whereby EDS was to construct a tire transformation system (TTS) for RTA for $2.5 million. In 1990, disputes arose between the two, and RTA sued for breach of contract and voted to cease its business operations in 1991. In 1992, RTA and EDS entered into a settlement agreement, where EDS agreed to pay RTA a certain sum of money over a period of time and to continue to develop TTS. As of December 1994, EDS had not paid RTA. The taxpayers therefore, alleged that they were entitled to deduct the loss when RTA was dissolved.

█ In its analysis, the district court agreed with the government that the taxpayers had not satisfied their burden that the loss would never be recovered. *Jeppsen v. Comm'r,* 128 F.3d 1410, 1418 (10th Cir.1997). Citing to *Jeppsen,* the district court stated that "if Plaintiffs' prospect of recovery 'was simply unknowable,' Plaintiffs would not be entitled to the deduction in 1994." *Wagner,* 2003 WL 691029 at *2. In the alternative, the taxpayers argued that since RTA was dissolved, the stock was worthless and therefore, they were entitled to claim of worthless stock deduction under 26 U.S.C. § 165(g). Again, the district court disagreed and citing *Genecov v. United States,* 412 F.2d 556 (5th Cir. 1969) and *Miami Beach Bay Shore Co. v. Comm'r,* 136 F.2d 408 (5th Cir.1943), stated that stock does not become worthless until the last vestige of value has disappeared. And, as long as the stock has any value, either present or potential, the taxpayer may not claim a deduction on account of its value shrinkage. *Wagner,* 2003 WL 691029 at *3–4, citations omitted.

Based upon the foregoing authority, this Court is satisfied that it did not err in considering the Semi–Tech litigation. In *Jeppsen,* the Tenth Circuit affirmed the tax court's determination that the taxpayer had failed to sustain his burden where he filed his return after he had initiated a lawsuit to recover his loss. In this case, the Debtor and Bilzerian filed their amended 1989 tax return in June of 1991, *after* the initiation of the suit against Semi–Tech. In Wagner, the taxpayers attempted to assert a worthless stock loss during the year that the corporation was

dissolved yet the court held that the stock was not rendered valueless. In this case, although the common stock of Bicoastal was cancelled, there was nonetheless a stock trust agreement that inured to the benefit of the shareholders.

■ The last contention by the Debtor that this Court erred in finding that the stock became worthless in the year 1993 is that this Court failed to give deference to the Debtor's determination of the year of loss. Quoting *Echols*, the Debtor asserts that the taxpayer is "entitled to the same exercise of judgment and discretion in determining when an asset is worthless to him, given a reasonable showing that the asset was in fact valueless at the time selected by the taxpayer." *Echols*, 935 F.2d at 707–08. In the instant case, the Debtor and Bilzerian filed their amended 1989 tax return in the year 1991. It is without dispute that in 1990, Bilzerian confirmed his obligation to Oxley and the Tallant Trust and entered into both a Settlement Agreement and Collection Agreement wherein he provided a secured interest in Bicoastal's common stock to collateralize Bilzerian's obligations to Oxley. (IRS Ex. 46). This Court is satisfied that it did not err in not affording substantial weight to the Debtor's decision to seek a loss based upon worthlessness of the stock in the year 1989. As noted by the Supreme Court in *Boehm v. Commissioner*, 326 U.S. 287, 66 S.Ct. 120, 90 L.Ed. 78 (1945), the "taxpayer's attitude and conduct are not to be ignored, but to codify them as the decisive factor in every case is to surround the clear language of the [applicable statute] with an atmosphere of unreality and to impose grave obstacles to efficient tax administration." *Boehm*, 326 U.S. at 293, 66 S.Ct. 120.

*Second Issue: The Adjusted Basis of the Bicoastal Stock*

The Debtor asserts that this Court erred in finding that (1) the Debtor's initial basis in Bicoastal common stock was $23.4 million rather than the $30.4 million and (2) the Debtor's adjusted basis in Bicoastal stock was $4.8 million rather than the $23.4 million. This Court is satisfied that upon reconsideration, this Court affirms its findings *in toto*.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Motion for Reconsideration of Findings of Fact, Conclusions of Law and Memorandum Opinion dated April 18, 2003 be, and the same is hereby, granted and in part and denied in part. Upon reconsideration, this Court affirms its Findings of Fact, Conclusions of Law and Memorandum Opinion entered on April 18, 2003.